# OWENSBORO WATERWORKS COMPANY *v.* OWENSBORO.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF KENTUCKY.

No. 145.   Submitted December 13, 1905.—Decided January 2, 1906.

Maladministration of its local affairs by a city's constituted authorities cannot rightfully concern the National Government, unless it involves the infringement of some Federal right.

When a Federal court acquires jurisdiction of a controversy by reason of the diverse citizenship, it may dispose of all the issues in the case, determining the rights of parties under the same rules or principles that control when the case is in the state court.   But, as between citizens of the same State, the Federal court may not interfere to compel municipal corporations or other like state instrumentalities to keep within the limits of the power conferred upon them by the State, unless such interference is necessary for the protection of a Federal right.

The acts of a municipal corporation are not wanting in the due process of law

ordained by the Fourteenth Amendment, if such acts when done or ratified by the State would not be inconsistent with that Amendment.   Many acts done by an agency of a State may be illegal in their character, when tested by the laws of the State, and may, on that ground, be assailed, and yet they cannot, for that reason alone, be impeached as being inconsistent with the due process of law enjoined upon the States.

The Fourteenth Amendment was not intended to bring within Federal control everything done by the States or by its instrumentalities that is simply illegal under the state laws, but only such acts by the States or their instrumentalities as are violative of rights secured by the Constitution of the United States.

The Circuit Court cannot take cognizance of a suit to prevent a municipality from improperly issuing bonds under the circumstances of this case as it does not involve a controversy under the Constitution and laws of the United States and diverse citizenship does not exist.

THE plaintiff in this suit, the Owensboro Waterworks Company, is a private corporation of Kentucky, while the defendant, the city of Owensboro, is a municipal corporation of the same Commonwealth.

The bill was dismissed for want of jurisdiction in the court below to hear and determine the cause, the Circuit Court being of opinion that the suit was not one arising under the Constitution or laws of the United States, and the matter in dispute not of sufficient value to give that court jurisdiction.

The case made by the bill was this:

On the tenth day of October, 1900, the Common Council of Owensboro adopted an ordinance authorizing the borrowing of money, upon the city's bonds, for the purpose of erecting a system of waterworks for supplying the city of Owensboro and its inhabitants with water.   The ordinance provided for a submission to the voters of the question of issuing city bonds to the amount of $200,000 with which to raise money for the purpose just stated.

The election was held and the proposition was carried, more than two-thirds of those voting approving the proposed issue. of bonds.

By an ordinance of December 3, 1900, bonds to the amount of $200,000 were directed to be issued, and $14,666.66 was appro-

priated out of the revenues and public moneys of the city for
the payment of the semi-annual interest on the bonds and the
creation of a fund for the ultimate payment of the principal
thereof, such fund to be designated as the Owensboro Water
Bond Account.

By an ordinance approved March 11, 1901, $14,666.66 was
appropriated and set apart out of the revenues and funds of
the city, to be raised by taxation or otherwise, each year until
the bonds were paid, for the purpose of paying the interest on
the bonds semi-annually and for creating a sinking fund for the
payment of the principal of the bonds. And for the purpose
of providing a fund for that purpose it was ordained, the bill
alleged, that there should be, and that there was thereby, levied
upon all the taxable property of said city subject by law to tax-
ation for municipal purposes, a direct annual tax for the year
1901, and for each succeeding year up to and including the year
1931, sufficient to raise the said sum of $14,666.66, to be col-
lected annually with other municipal taxes, licenses, revenues
and public dues, and continuing from year to year until the ul-
timate payment of the bonds; and it was also, by the ordinance,
ordained that no part of said funds should ever be used for, or
appropriated to, any other purpose or use, except the payment
of the principal and interest of the bonds; further, that provi-
sion to meet the requirements of said section be made in the
annual budget and appropriation ordinance.

Pursuant to the ordinance of December 3, 1900, the city exe-
cuted 200 bonds of $1,000 each, bearing 4½ per cent interest
per annum from their date, January 1, 1901, payable semi-
annually, and transferable by delivery, and at the date of the
bringing of this suit all of those bonds were, the bill alleged, in
the possession or under the control of the city, "ready and
about to be immediately sold and delivered to purchasers, with
the exception of seven bonds which the said Mayor and Council
have already sold and have received therefor the sum of $7,000."

In each of the years 1901, 1902 and 1903 the city, proceeding
under ordinances adopted by the Common Council, levied an

*ad valorem* tax of $2 on each $100 worth of property in the city subject to taxation, part of such tax, $14,666.66, to be appropriated annually for the payment of interest on the water bonds and for the creation of a sinking fund for the ultimate payment of the principal. A similar tax was also levied for 1904, of which $14,666.66 was appropriated to pay interest and create a sinking fund—$8,000 to be paid on interest and $6,666.66 to go into the sinking fund. So that under the levies made in 1901, 1902 and 1903, $44,000 had been collected for interest and the sinking fund, and $14,666.66 was to be collected for 1904.

Of the 200 bonds actually signed, 193 remain in the hands of the city, its officers and agents, and after applying the sum of $44,000, collected under the levies of 1901, 1902 and 1903, and the $14,666.66 to be collected under the levy of 1904, there will remain only $149,000 to be raised by the sale of bonds. Nevertheless, the city, by its agents and officers, claims to have authority and proposes immediately to sell and dispose of, and, unless restrained, will sell and dispose of the entire 193 bonds, amounting to $193,000. If that be done, then the city will have collected and realized $244,000 on account of the erection of the waterworks; whereas it was only authorized to raise $200,000 for that purpose. Of the $44,000 collected by the city $20,000 has been expended for land on which the proposed water plant was to be erected, while $24,000 has been illegally expended for purposes other than those for which it was collected.

The bill further alleges that for each of the years 1901, 1902 and 1903, taxes were levied on the taxable property of plaintiff, and other taxpayers of the city; that capitation, license and franchise taxes were also assessed, levied and collected by it; that all the taxes so levied were collected each year, from all sources, and for all purposes, were expended and exhausted each year, and none so collected, in either of said years, are now on hand; that no part of the $44,000 collected is on hand, nor has said city any means of replacing same, except by levying

and collecting taxes from the taxpayers of said city for that purpose, and this it had no legal authority to do; that by the payment of the $44,000 the city paid and extinguished that amount of bonds, and bonds to that amount should be surrendered up and cancelled, and that by law complainant, and other taxpayers have the right to have said bonds so surrendered and cancelled.

The bill proceeds: "Your orator says said bonds are negotiable by delivery, and are on the footing of commercial obligations, and if said 193 bonds, or any of them, shall be sold and transferred for value, to innocent *bona fide* purchasers, then complainant and all other taxpayers of said city would be compelled to pay the full amount of all of said 200 bonds, and the full amount of all interest accrued, or to accrue thereon. It says defendant and its officers and agents purpose and are now endeavoring to immediately sell and transfer said 193 bonds, and coupons attached, to some person for value, and are doing this without giving such persons any notice, or information of the facts herein stated, or of any facts pertaining to the collection or disposition of any part of said $44,000, and purpose to continue said efforts without giving to any person, to whom said bonds may be offered, any notice or information pertaining thereto, and said prospective purchasers have no notice, knowledge or information of any of said facts, so far as complainant is advised or believes, and, unless restrained and prevented, defendant and its officers and agents will immediately sell said bonds and coupons to some person or persons, for value, who have no notice or information in regard to said transaction, and will do so without giving such persons any notice or information as to said facts, and thus complainant and its property, and said other taxpayers and their property, will be burthened with the payment of said entire 200 bonds and interest, and, by the means aforesaid, and without due process of law, deprived of the right to have credit, on said debt, for said $44,000 heretofore paid by them, and be compelled to pay said 200 bonds and all interest accrued and to accrue thereon.

"Your orator says that by Article fourteen of the Amendments to the Constitution of the United States it is provided that no State shall 'deprive any person of life, liberty or property, without due process of law,' but your orator says that if more than 149 of said bonds shall be sold to innocent purchasers, without notice, which defendant city is about to do, that it and the taxpayers, for whom it sues, will be forced to pay such excess, both principal and interest, without opportunity to plead, or to be heard as to the matters herein alleged, and so deprived of their property without due process of law, and the amount in controversy here exceeds $2,000."

The relief prayed was that the defendant, its officers and agents, be perpetually enjoined and restrained from selling or disposing of any of the bonds in excess of 149 in number, and before selling them to detach and destroy all coupons for interest that have heretofore matured or that may mature before the date when the bonds may be sold, and be ordered and compelled to cancel and surrender all of the bonds, and all coupons pertaining thereto, in excess of 149, and that the bonds and coupons be destroyed, and if the $14,666.66 levied May 16, 1904, should be collected before the sale was made of the bonds, that said sum be applied to the extinguishment of the debt and interest, and the bonds and interest coupons be destroyed, and not sold, as prayed for in regard to the money heretofore collected; also that defendant be enjoined and restrained from levying and collecting from complainant, and all the other taxpayers, of the city, or their property, any taxes in excess of a sufficient amount to create a sinking fund with which to pay the 149 bonds, when sold, and the seven bonds, already sold, and to pay the interest to accrue thereon, upon the seven bonds, heretofore sold, and to accrue upon the 149 bonds, after they were sold.

The plaintiff further prayed that the sum of $44,000, paid by the taxpayers of the city, be adjudged to have satisfied that amount of the bonds, and that it have such further or other relief in the premises as the nature of the case required.

*Mr. John D. Atchison* and *Mr. William T. Ellis* for appellant:

The Circuit Court of the United States has jurisdiction. The bill shows the taxpayers are about to be deprived of their property without due process of law. Complainant has the right, as a taxpayer, to maintain this action in its own behalf and on behalf of all the other taxpayers, who are too numerous to be brought before the court, and there is nothing in the record to show that it will not truly represent the interest of such other taxpayers.

By the sale of the entire issue of negotiable bonds, involved in this case, the officers of the city, who are officers created by the state statute, and thus officers of the State, will place an unlawful encumbrance upon the property of the taxpayers by which they will be compelled to pay $44,000 more than they agreed to pay, and thus be deprived of their property to that extent without due process of law. *Dundee Mortgage Co.* v. *School District*, 19 Fed. Rep. 359; *Southern Railway Co.* v. *Corporation Commission*, 97 Fed. Rep. 513; *Ex parte Virginia*, 100 U. S. 339; *C., B. & Q. R. R. Co.* v. *Chicago*, 166 U. S. 226.

The Circuit Court has jurisdiction. *Brown* v. *Trusdale*, 138 U. S. 389; *Smith* v. *Swormstedt*, 16 How. 302; *Water Company* v. *El Paso*, 152 U. S. 157; *Colvin* v. *Jacksonville*, 158 U. S. 456.

*Mr. Charles S. Walker* for appellee.

MR. JUSTICE HARLAN, after making the foregoing statement, delivered the opinion of the court.

The bill presents the case of the diversion, or the intended diversion, by a municipal corporation, of certain funds which under legislative sanction it had collected from taxpayers for a specific public object, which funds were not applied to the object for which they were raised, and which failure of duty on the part of the corporation so to apply them may ultimately cause increased taxation if the full amount originally intended to be applied to the particular object named by the legislature is to be collected.

We share with the court below the difficulty in understanding how such a case can be regarded as one arising under the Constitution of the United States.   It certainly must be one of that character in order to sustain the jurisdiction of the Circuit Court—the parties, all, being citizens of Kentucky.

In support of their contention that the present suit arises under the Constitution of the United States and is within the original cognizance of the Circuit Court, without regard to the citizenship of the parties, the learned counsel for the plaintiff in error cites certain cases in this court which hold that the prohibitions of the Fourteenth Amendment "refer to all the instrumentalities of the State, to its legislative, executive and judicial authorities," and consequently, "whoever, by virtue of public position under a state government, deprives another of any right protected under that Amendment against deprivation by the State, violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State." *Ex parte Virginia*, 100 U. S. 339, 346, 347; *Neal* v. *Delaware*, 103 U. S. 370, 397; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Gibson* v. *Mississippi*, 162 U. S. 565; *Chicago, B. & Q. R. R. Co.* v. *Chicago*, 166 U. S. 226, 235.

These were all cases in which the right sought to be protected was held to have been granted or secured by the Constitution of the United States, but yet was violated by some agency or instrumentality proceeding under the sanction or authority of the State.   But no right involved in the present case has its origin in or is secured by the Constitution of the United States. It is not contended that the legislative enactments by the authority of which the city intends to establish and maintain a system of waterworks are inconsistent either with the constitution of Kentucky or the Constitution of the United States. The plaintiff, however, complains that the defendant city has not properly discharged its duties under the laws of the State. For the purposes of the present discussion let this be taken as true; still, maladministration of its local affairs by a city's con-

stituted authorities cannot rightfully concern the National Government, unless it involves the infringement of some Federal right. If the city authorities have received funds from taxation which ought strictly to have been applied to take up or cancel the bonds of the city, but have been used for other municipal purposes, and if, by reason of such misapplication of those funds, taxation may ultimately come upon the people for an amount beyond what the legislature originally intended—if nothing more can be said—the remedy must be found in the courts and tribunals of the State and not in the Federal courts of original jurisdiction where the controversy is wholly, as it is here, between citizens of the same State. When a Federal court acquires jurisdiction of a controversy by reason of the diverse citizenship of the parties, then it may dispose of all the issues in the case, determining the rights of parties under the same rules or principles that control when the case is in the state court. But, as between citizens of the same State, the Federal court may not interfere to compel municipal corporations or other like state instrumentalities to keep within the limits of the power conferred upon them by the State, unless such interference is necessary for the protection of a Federal right. There has been no actual invasion here of any right secured by the Constitution of the United States; nothing more, taking the allegations of the bill to be true, than a failure of a municipal corporation to properly discharge the duties which, under the laws of the State, it owes to its people and taxpayers. And there is here no deprivation of property without due process of law within the meaning of the Fourteenth Amendment, even if it be apprehended that the defendant city may, at some future time, impose a tax in violation of its duty under the laws of the State.

The utmost that can be said of the present case, as disclosed by the bill, is that the municipal authorities of Owensboro have done some things outside or in excess of any power the city possessed. But this does not of itself show that they acted without the due process of law enjoined by the Fourteenth

Amendment; for, if what is complained of had been done directly by the State or by its express authority, or if the legislature could legally ratify that which the city has done, as it undoubtedly might do, no one would contend that there had been a violation of the due process clause of the Amendment. It cannot be that the acts of a municipal corporation are wanting in the due process of law ordained by the Fourteenth Amendment, if such acts when done or ratified by the State would not be inconsistent with that Amendment. Many acts done by an agency of a State may be illegal in their character, when tested by the laws of the State, and may, on that ground, be assailed, and yet they cannot, for that reason alone, be impeached as being inconsistent with the due process of law enjoined upon the States. The Fourteenth Amendment was not intended to bring within Federal control everything done by the States or by its instrumentalities that is simply illegal under the state laws, but only such acts by the States or their instrumentalities as are violative of rights secured by the Constitution of the United States. A different view would give to the Fourteenth Amendment a far wider scope than was contemplated at the time of its adoption, or than would be consonant with the authority of the several States to regulate and administer the rights of their peoples, in conformity with their own laws, subject always, but only, to the supreme law of the land.

We are of opinion that this suit is not one arising under the Constitution of the United States, and, therefore, the parties being all citizens of Kentucky, it is not one of which the Circuit Court could take original cognizance.

*Affirmed.*