## THOMPSON v. COMMONWEALTH OF KENTUCKY.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 160.    Argued March 9, 1908.—Decided April 6, 1908.

Due process of law does not assure to taxpayers that the court will sustain the interpretation given to a statute by executive officers or relief from the consequences of misinterpretation by either such officers or the court; one acting under a statute must take his chances that such action will be in accord with the final decision as to its proper interpretation; this is a hazard under every law from which there is no security.

It is within the power of the State to tax spirits in bonded warehouses and require the warehouseman to pay the same with interest after the taxes due to the United States Government have been paid; and if the warehouseman is given a lien on the spirits for the taxes and interest paid by him he is not deprived of his property without due process of law.

The fact that a warehouseman paid taxes without interest on spirits in bond under a mistaken interpretation of the statute by the state officers and subsequently permitted the spirits to be withdrawn does not estop the State to recover from the warehouseman interest due on such taxes under the statute, and a judgment therefor does not deprive the warehouseman of his property without due process of law within the meaning of the Fourteenth Amendment, and so held as to the tax statutes of Kentucky.

A classification of distilled spirits in bond, as distinct from other property in regard to payment of interest on taxes does not constitute a discrimination amounting to a denial of equal protection of the laws within the meaning of the Fourteenth Amendment.

94 S. W. Rep. 654, affirmed.

THIS is an action to collect interest on deferred taxes assessed for the years 1898 to 1902, both inclusive, on distilled spirits, which were stored in the warehouse of plaintiff in error.

The petition of the Commonwealth contains a cause of action for each year, and it is alleged in each that plaintiff in error was the owner or proprietor of a bonded warehouse in which distilled spirits were stored, and, as required by law, reported the quantity of spirits on which the Government tax had been paid or was then due, and the amount of spirits theretofore removed since the preceding report, showing the years in which

such spirits were assessed for taxation and the number of packages and their value as assessed. And it is alleged that by such reports, which were verified as the law directs, there was shown to be due the Commonwealth of Kentucky, "as taxes, exclusive of any interest, the sum of —— dollars" for the particular year. It is further alleged that "the sum reported as taxes due was incorrect, in that there was not included accumulated interest on the taxes due while the spirits remained in the bonded warehouse." The amount for each year is alleged. The petition was amended by order of the court and made specific as to the tax rate assessed by the Commonwealth for the period of years covered by the petition. The amendment also stated the valuation fixed by the state board of valuation on distilled spirits and the time when the spirits were placed in bond, when withdrawn, and the amount of taxes paid thereon by plaintiff in error.

The answer of the defendant, plaintiff in error here, is very voluminous. It denies that plaintiff in error was indebted to the Commonwealth for taxes and interest for any of the years mentioned in the petition, beyond that which was duly paid to the Commonwealth and duly credited by it, "as set out in the petition," denies that there is due any interest "from any date whatever," or any penalty or penalties. It is alleged with much circumstantiality that plaintiff in error made reports required of him by the law of the State upon blank forms furnished by the auditor of public accounts, who was charged with the duty of supervising the collection of all taxes on distilled spirits, and adjusting and settling the claims and accounts therefor, and that that officer verified and approved the reports and accepted the amounts of taxes paid, with the reports and issued receipts for and on behalf of the Commonwealth. And it is alleged that the auditor and treasurer having accepted the principal sum of taxes without any interest or penalty, in full satisfaction of the Commonwealth's claim, to permit it to recover any other or further sum "would be inequitable, unconscionable and unjust," and that any re-

covery would be a total loss to plaintiff in error. That the law was construed by all the officers of the state government since its enactment in 1892 to only require the payment of the principal sum of the taxes. And that such officers have so construed the law and the subsequent act, known as the revenue law, which was enacted March 29, 1902, in such manner that no interest or penalties were exacted of plaintiff in error, or any other owner or proprietor of a bonded warehouse. It is also alleged that plaintiff in error was not the owner of said spirits, but that they were owned by non-residents of the State; that under the law the person who paid the taxes thereon was entitled to a lien to secure the amount so paid, and would have been entitled to a lien for the payment of interest and penalties if any had been exacted, and to enforce the same possession could have been taken, but relying upon the construction placed upon the law as aforesaid, and believing that all claims of the State had been fully satisfied, plaintiff in error permitted the owner thereof to withdraw the same and ship it out of the State of Kentucky without the payment of any interest or penalties; that such spirits have long since been consumed and the lien thereon lost. And it is alleged that some of the owners are insolvent and others dead, and hence any recovery against plaintiff in error will be a total loss to him.

There are a number of argumentative allegations that the spirits while in the bonded warehouse were in the possession of the United States, and not therefore in the possession of plaintiff in error or within the jurisdiction of the State of Kentucky, or subject to taxation by that State or any of the municipalities, or subject to any process of the courts of the State. And it is further alleged or argued that if the law be construed, as the State in this action seeks to construe it, such law would be an "unwarranted interference with the scheme and plan of the United States Government, which has been in force for forty years," and would deprive plaintiff in error and all owners of distilled spirits "of the rights and privileges secured and guaranteed by the Constitution of the United

States," and rights secured by the Fourteenth Amendment, "which provides that no State shall abridge the privileges or immunities of citizens of the United States, nor deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

*Mr. J. B. Thompson,* with whom *Mr. Phil B. Thompson, Junior,* was on the brief, for plaintiff in error.

*Mr. John W. Ray,* with whom *Mr. N. B. Hays* was on the brief, for defendant in error.

Mr. Justice McKenna, after making the foregoing statement, delivered the opinion of the court.

The Court of Appeals of Kentucky opened its opinion in this case by saying that the whole question presented was whether the statute of the State, "imposing a tax on distilled spirits in bonded warehouses," violated the Federal Constitution, and particularly the Fourteenth Amendment thereof. It was also said that the validity of the statutes under the constitution of the State had been construed and decided in *Commonwealth* v. *E. H. Taylor, Jr., Co.,* 101 Kentucky, 325; *Commonwealth* v. *Walker,* 25 Ky. Law Rep. 2122; *Commonwealth* v. *Rosenfield Bros.,* 118 Kentucky, 374. And the court quoted from appellant's brief (plaintiff in error here) as follows:

"It is not necessary on this appeal that the court shall either overrule, modify or change in any manner its opinion rendered in the case of *Commonwealth* v. *Rosenfield.* In accordance with the previous opinion of the court in the case of *Commonwealth* v. *E. H. Taylor, Jr.,* 101 Kentucky, 325, it was held in the *Rosenfield case* that the law which imposed the tax and interest—the matter in controversy in this action —is not in conflict with the constitution of the State of Kentucky. It has never been held that this law is not in conflict

with the Constitution and laws of the United States, and this is the question we now present.".

Plaintiff in error, however, seems to broaden his contentions here, and attacks the construction of the state statutes made in *Commonwealth* v. *Rosenfield Brothers*, and urges either a different construction than there made, or a disregard of that construction, as constituting extortion against him, or as depriving him of his property without due process of law. The basis of the contention is that he had paid taxes demanded of him under a different construction and received the receipt therefor, and that the State is estopped to make further demands upon him. The hardship of his situation is strongly presented. He was required, he urges, to report for assessment and pay taxes on property belonging to another. He made the report and paid all the taxes demanded of him. Having completely discharged his legal obligations, as he supposed, he delivered the property to its owner and lost the lien which the statute gave him, and which constituted the legal justification, as he contends, of the charge upon him, and he is now subjected to liability for interest and penalties for which he has no security or power to enforce reimbursement. A new demand is made upon him, he says, "special in its character and retroactive in its effect, in violation of the constitution of the State of Kentucky and of the Fourteenth Amendment of the Constitution of the United States." But these contentions, so far as they rest upon a supposed change in the law, were rejected in *Commonwealth* v. *Rosenfield Brothers*, *supra*, the court deciding that interest was due under the law of 1892, under which the taxes were demanded and paid, and as well as under the law of 1902.

A summary of the statutory provisions will make clear the decision. § 4105 of the Compiled Statutes of 1894 requires "every owner or proprietor of a bonded warehouse" to make a report between certain dates to the auditor of public accounts of the kind and quantity of spirits in such warehouse on the fifteenth day of September. The auditor of public accounts is required

to submit the same to the board of valuation and assessment; which board is to fix the value of the spirits for the purpose of taxation under the act and to assess the same accordingly. Notice is required to be given to the owner or proprietor of the warehouse of the amount so fixed, and certify the value of the spirits assessed for said taxes to the auditor of public accounts, and that officer certifies to the county clerks of the respective counties the amount liable for county, city, town or district taxation, and the date when the bonded period will expire. The report is filed in the office of the county clerk and certified to the proper collecting officer. The person or corporation having custody of the spirits on the fifteenth of September in the year the assessment is made is made liable for the taxes "due thereon, together with all interest and penalties which may accrue; and any warehouseman or custodian of such spirits, who shall pay the taxes, interest or penalties on such spirits, shall have a lien thereon for the amount so paid, with legal interest from date of payment." § 1, Art. V, ch. 103, p. 310, Acts 1892. § 4110, § 6, Art. V, provides as follows: "Taxes on distilled spirits which may be assessed while in a bonded warehouse, and on which the United States Government tax has not been paid or will not become due before the first day of March after assessment, shall be due on the first day of January, May and September next after the said Government tax becomes due or be paid, or when the spirits are removed from the warehouse; and the taxes on each year's assessment shall bear legal interest as other taxes."

The statute of 1902 strikes out the words "as other taxes" and inserts the words "until paid." Upon this change the controversy turns. The Court of Appeals in *Commonwealth* v. *Rosenfield Brothers, supra,* said there was a change in words only, not one in substance or meaning, and unless this be so, it was said, the legislature had taken "great pains to insert into every section relating to the subject-matter words which meant nothing." And again: "We do not know how the legislature could have made it plainer that state taxes on whiskey

in bond should bear interest than by the language used in the section aforesaid." The section had been quoted. This was the court's conclusion "as an original proposition." But it cited as "direct authority" *Commonwealth* v. *Taylor*, 101 Kentucky, 327, where the "very question arose." To the contention that the warehouseman has lost his lien through the construction put upon the act by the State's fiscal officers, and that the State was therefore estopped from collecting the interest, the court replied: "It may be true that this will work a hardship upon the distiller, but it was his duty, under the law, to pay the taxes and the accrued interest, and we cannot, in his behalf, waive the time-honored and conclusive presumption that he knew the law; and especially is this true since 1897, when the case of *Commonwealth* v. *Taylor* was decided, thus establishing beyond all question that taxes on whiskey in bond bore interest on the assessments made during the bonded period. Saying this, however, it is elementary that the State is not estopped by the laches of its officers."

But from this situation this court cannot give relief. Due process of law does not assure to a taxpayer the interpretation of laws by the executive officers of a State as against their interpretation by the courts of the State or relief from the consequences of a misinterpretation by either. We do not mean to indicate that the decision of the court was wrong. It would, indeed, be difficult to resist the force of its reasoning. At any rate, it is the province of the courts to interpret the laws of the State, and he who acts under them must take his chance of being in accord with the final decision. And this is a hazard under every law and from which or the consequences of which we know of no security.

The assignments of error repeat frequently and dwell upon the fact of the power of the Federal Government over the spirits and the distillery and its custody of them, and, it is urged, that such power is exclusive of the exercise of any other power whatever, and such custody has the effect to withdraw in legal contemplation the property from the jurisdiction of

the State, though it is actually present in the State, making it, indeed, as though it were outside of the territorial limits of the State. And it is hence concluded that plaintiff in error by the law of Kentucky is made to pay taxes on property belonging to another person outside of the jurisdiction of the State, and, it is contended, the decision of the court giving the laws these effects denies plaintiff in error the equal protection of the laws and deprives him of his property without due process of law.

There are many elements involved in the contention, and it is not easy, without extending this opinion to a great length, to give them separate and individual discussion. We will therefore consider only the main one, to wit, the power of the Federal Government over the spirits and the warehouse and the absolute want of power in the State to tax them or subject them to its process. This is the basic principle of the contentions of plaintiff in error, "for," he says, "the warehouseman cannot be made liable for the tax on the property if the property itself is not liable for the tax." There is further argument, to the effect that by reason of the control of the Federal Government the State cannot give, in all events and against all possibilty of the exercise of that control, to the warehouseman the means to enforce the lien conferred by the statute to reimburse himself, and he should therefore "be by that fact discharged from all liability on account of such assessment." But these contentions rest upon an exaggerated view of the control of the Federal Government and the effect of the Kentucky statute. The scheme of the statute is simple, and it is an exercise of the power which, we said in *Carstairs* v. *Cochran*, 193 U. S. 10, 16, the State undoubtedly possessed "to tax private property having a situs within its territorial limits." And this was said in response to contentions having the same ultimate foundation as those urged in the case at bar. The proposition was indeed considered as elemental, and as requiring nothing more than the illustration of cases. There may be instances where property, though within the territorial

limits of a State, is not subject completely to the jurisdiction of the State, and counsel has cited a number of such instances. Where their example applies they will be followed. It does not apply in the present case. There is no conflict between the state and Federal purpose. There is no question of the supremacy of the latter and its complete fulfillment. "The State does not propose," the Court of Appeals said, "to collect the taxes so long as the spirits are in the custody or under the lien of the Federal Government." There is actual accommodation, therefore, of the power of the State to the rights of the Federal Government, and a harmonious exercise of the respective sovereignties of each, preserving to each necessary power. This is what *Carstairs* v. *Cochran* decides. See also *Baltimore Shipbuilding & Dry Dock Co.* v. *Baltimore*, 195 U. S. 375.

A word more may be necessary as to the contention that the statutes in controversy, as interpreted by the Court of Appeals of the State, deny to plaintiff in error the equal protection of the laws. The ground of this contention is not explicitly distinguished in the assignments of errors from the grounds of the other contentions, and in the brief of counsel the contention is made to depend upon the view, rejected by the Court of Appeals of the State, that the act of 1902 made a change in the law, and that only the owners of distilled spirits in bond are required to pay interest "upon taxes settled at the time they were due." The effect of the act of 1902 has been considered and it is only necessary to add that the distinction made by the taxing statutes of the State between distilled spirits in bond and other property does not constitute a discrimination condemned by the Fourteenth Amendment. The power of the State to classify persons and property in its legislation is well established, and the power is not transcended by the statutes under review. *Billings* v. *Illinois*, 188 U. S. 97.

*Judgment affirmed.*