# STATE TAX COMMISSION

### vs.

# THE MELVALE DISTILLERY COMPANY.

---

## STATE TAX COMMISSION

### vs.

## MORRIS SCHAPIRO ET AL.,

### TRADING AS THE STEWART DISTILLING COMPANY.

*Liquor in Warehouse—Taxes—Warehouseman's Liability.*

Code, art. 81, secs. 218-228, requiring every warehouseman to pay the State taxes on distilled spirits in his warehouse, and giving him a lien thereon to secure his reimbursement, is still valid and effective, in spite of the adoption of the Eighteenth Amendment to the United States Constitution, and the Act of Congress known as the Volstead Act, since these latter prohibit the sale of intoxicating liquor for beverage purposes only, and the warehouseman can still enforce his lien by sale of the liquor for non-beverage purposes.

*Decided January 13th, 1922.*

Appeals from the Baltimore City Court (DAWKINS, J.).

Petitions by the Melvale Distillery Company, a corporation, and by Morris Schapiro and others, trading as the Stewart Distilling Company, by way of appeal from certain rulings of the State Tax Commission of Maryland. From orders reversing the rulings of the State Tax Commission, said commission appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, and ADKINS, JJ.

*Alexander Armstrong, Attorney General,* and *J. Purdon Wright, Assistant Attorney General,* for the appellant.

*Edward M. Hammond,* with whom were *Karr, Hammond & Darnall* on the brief, for the Melvale Distillery Company, appellee.

*Randolph Barton, Jr.,* for Morris Schapiro and others, trading as the Stewart Distilling Company, appellees.

BOYD, C. J., delivered the opinion of the Court.

As the appeals of the State Tax Commission of Maryland in the cases against the Melvale Distillery Company of Baltimore County and Morris Schapiro and others, copartners trading as the Stewart Distilling Company, involve the same questions and were argued together, they will be disposed of in one opinion.

On the 14th of March, 1921, after hearing, the State Tax Commission assessed the Melvale Distillery Company for purposes of taxation for the year 1921 with 5,312 barrels of distilled spirits at $20 per barrel, and the Stewart Distilling Company with 12,110 barrels at the same rate, under the provisions of sections 218, etc., of article 81 of the Code. The office of State Tax Commissioner was abolished and the duties imposed upon and powers given him by existing law devolved upon the State Tax Commission, which was created by the Act of 1914, ch. 841.

By what is now section 218 of article 81 of the Code, it was enacted that there should be levied and collected upon all distilled spirits in this State as personal property the same rate of taxation which is imposed by the laws of the State on other property for State and county purposes. By section 219, for the purpose of assessment and collection, it was made the duty of each distiller and of every owner or pro-

prietor of a bonded or other warehouse, in which distilled
spirits are stored, and of every person or corporation having
custody of such spirits, to make report to the State Tax
Commissioner on the 1st day of January of each and every
year of all the distilled spirits on hand at such date, and
the tax for the ensuing year from the said first of January
shall be levied and paid on the assessment of distilled spirits
so in hand as representing the taxable distilled spirits for
such year; provided, however, that the same distilled spirits
shall not be taxed twice for the same year. Sections 220 to
228 provide for the method of taxation, for an appeal, for a
lien upon the distilled spirits for which taxes have been paid
by the warehouseman, custodian or agent, etc. It was shown
at the hearing before the State Tax Commission on March
11th, 1921, that the number of barrels of whiskey above
stated were in the respective bonded warehouses and belonged
to other parties.

The cases now before us are appeals from the Baltimore
City Court, which reversed the finding of the State Tax
Commission and held the tax to be inoperative. The valid-
ity of the law thus taxing distilled spirits was sustained by
this Court and the Supreme Court of the United States by a
number of decisions. *Monticello Co.* v. *Baltimore,* 90 Md.
416; *Fowble* v. *Kemp,* 92 Md. 630; *Carstairs* v. *Cochran,*
95 Md. 488 (affirmed in 193 U. S. 10); *Hannis Distilling
Company* v. *Baltimore,* 114 Md. 678 (216 U. S. 285). See
also *Thompson* v. *Kentucky,* 209 U. S. 340; *Selliger* v. *Ken-
tucky,* 213 U. S. 200. We will, therefore, not discuss that
question, excepting in so far as it may be necessary in con-
sidering the points now raised, owing to the adoption of the
Eighteenth Amendment to the Constitution of the United
States, the Act of Congress of October 28th, 1919, com-
monly known as the "Volstead Act," and regulations, etc.,
of the Commissioner of Internal Revenue and the Prohibi-
tion Commissioner.

The appellees contend, (*a*) that by the action of the State
Tax Commission they are deprived of their property with-

out due process of law guaranteed to them by the Fourteenth Amendment to the Constitution of the United States, by reason of the fact that they are compelled to pay taxes on property belonging to others without having power to reimburse themselves for the taxes on the whiskey stored in their warehouses—that by reason of the control and prohibition of the Federal Government, the State cannot give them the means to enforce the lien conferred by the State statute to reimburse themselves; (*b*) that the action of the State Tax Commission denies to them the equal protection of the law they are entitled to under the laws of the State and under the Fourteenth Amendment; (*c*) that it violates Articles 15 and 23 of the Declaration of Rights of Maryland, in that it requires one person to pay the taxes due by another, without furnishing any means to the one paying the tax by which he may reimburse himself for what he has paid.

It will be well to examine the Act of Congress referred to, and see just what it does provide for.    The Eighteenth Amendment does not seem to leave any doubt as to what was meant by its section 1, which is: "After one year from the ratification of this article the manufacture, sale or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited."    The prohibition was thus to begin one year from the ratification of the amendment, and was limited to the manufacture, sale, etc., "*for beverage purposes.*"    Section 2 provides that:    "The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation."    Congress promptly passed an act under that section, but some of the states, including Maryland, have moved very slowly in taking advantage of the right to legislate on the subject, causing them to be dependent on such laws as they had on the subject of intoxicating liquors prior to the Eighteenth Amendment and were still enforceable.

In *Ulman v. State,* 137 Md. 642, the defendants were indicted for selling liquor in Baltimore City without a license. They filed pleas in which they admitted that they had sold whiskey to the parties named "for non-beverage purposes, to wit, for medicinal purposes," and alleged that at the time of the sale they had a permit, issued by the United States Commissioner of Prohibition, to sell liquor for other than beverage purposes to others holding permits to purchase and use intoxicating liquor for those purposes, and alleged that the parties to whom they sold had such permits. They contended that the liquor laws applicable to Baltimore City had been abrogated or nullified by the Eighteenth Amendment and the Volstead Act, but we held that there was nothing in the liquor laws applicable to Baltimore City which were repugnant to the Eighteenth Amendment or the Act of Congress, and sustained the conviction of the traverser in the lower court. The opinion concluded by saying: "We hold that the law in question has not been abrogated so far as it prohibits in Baltimore City the sale of intoxicating liquor without a license, regardless of the purpose for which the liquor is sold."

In these cases it is not denied that the law imposing the tax on distilled spirits was valid prior to the adoption of the Eighteenth Amendment and the act of congress referred to, but it was contended that the appellees, who are warehousemen and do not own the whiskey, are prevented from reimbursing themselves for taxes paid by them for the holders of the warehouse certificates by reason of the amendment, act of congress and regulations adopted by the Commissioner of Internal Revenue and instructions given by him and the Prohibition Commissioner. But it seems to us, as suggested by the Attorney General and his assistant, that their position rests, in the language of Mr. Justice McKenna, in *Thompson v. Kentucky,* 209 U. S. 340, "upon an exaggerated view of the control of the Federal Government." The Eighteenth Amendment in terms only prohibits the manufacture, sale, etc., of intoxicating liquors for "bever-

age purposes," and the Volstead Act, as shown by its title, was, "An act to prohibit intoxicating beverages, and to regulate the manufacture, production, use and sale of high-proof spirits for other than beverage purposes, and to insure an ample supply of alcohol and promote its use in scientific research and in the development of fuel, dye and other lawful industries." An examination of the act will show that provisions are made for the manufacture, purchase, and sale of liquor for non-beverage purposes, and for the issuing of permits therefor. Without attempting to quote or discuss them, reference to sections 3, 4, 6, and 37 of that act will show that such liquors can still be manufactured, purchased, and sold for medicinal and scientific purposes, and it is said that the uses of them for non-beverage purposes are on the increase. Unless there be much illicit manufacturing and importation of them, the quantity of liquors that were in the country when the Eighteenth Amendment was adopted must already be decreased considerably in the amount on hand; and that must from year to year decrease, unless the demand for it for purposes allowed by this act will cause distillers to make more. Of course, the manufacture and the use of them are controlled by the law, and many regulations, some of which are inconvenient and very strict, but it is not unusual for honest people to be put to inconvenience or extra expense by reason of the necessity of having laws and regulations to try to afford protection against dishonest people and those who will violate the law, if opportunity is offered, and they think they can escape conviction.

The appellees complain particularly of the letters of January 27th and February 1st, 1921, sent by the Prohibition Commissioner to owners of distilleries and general bonded warehouses. By the one of January 27th, 1921, the owners were "notified not to honor any 1410's presented to you for the withdrawal of whiskey and purporting to be issued by the directors of the following states," naming them and including Maryland. The 1410's, as they are called, are, as we understand, permits to withdraw whiskey given on a

form known as 1410. The letter of February 1st, 1921, referred to the one of January 27th, 1921, and notified them "not to honor any 1410's presented to you for the withdrawal of whiskey and purporting to be issued by any state director, irrespective of the date such permit is issued or approved by the director." While there is no evidence in the case making explanation of such letters, they suggest on their face a probable reason for them, when they speak of them "purporting to be issued," etc. If we are permitted to recall what we have seen from time to time in the daily press, we can well understand the necessity for such action at times, as the daily papers have referred to the fact that such permits have been forged and improperly issued in some cases; but, without regard to what we may have seen in the newspapers, we might well understand that such things have been done, especially in view of the language of the letters referred to above.

Just how long these letters were in effect is not altogether clear, but amongst the circulars, etc., left with us is one of March 16th, 1921, addressed "to Federal Prohibition Directors," which notified them that "it is contemplated that on or about April 1st, 1921, the order of January 28th, 1921, and the order of February 1st, 1921, will be modified to permit retail druggists to make withdrawals of whiskey from bonded warehouses and from distillery free warehouses." On March 29th, 1921, another letter was sent out showing that, after April 1, 1921, that modification was permitted. Then on April 22nd, 1921, notice was given that another modification would be made, permitting wholesale druggists, on and after May 16th, 1921, to withdraw liquors from bond and from distillery free warehouses. So, by going through the numerous papers left with us, we might refer to others, but our object in referring to those we have is to show that at least some of the restrictions on the use of permits were only for a short period. For aught that appears in the records, both of the appellees may have started at once to deliver whiskey from their warehouses after April

1st. The whiskey in the warehouses was liable to taxation as long as it was in Maryland, and the only question was how to collect the tax. Of course, it may seem like a hardship for the warehouseman to have to pay the taxes for other people, and then probably have to wait for some time before he is reimbursed, but tax collectors and others connected with the collection of taxes are not generally so prompt and urgent as to impose unnecessary hardship on taxpayers, and especially on those who are required to pay for others. We do not mean that it would make any difference as to their legal liability if warehousemen are required to pay the taxes on distilled spirits in their warehouses, even when they have no money in hand or cannot get it promptly from the owners, but the fact is that those who collect taxes are not generally unreasonably urgent in collecting them.

The cases already decided, we think, reflect very much on, if they do not absolutely dispose of, the objections urged in these cases. In *Carstairs* v. *Cochran*, 95 Md. 488, which was affirmed in the Supreme Court, 193 U. S. 10, the Court through Judge Pearce answered most of the objections urged in these cases, notwithstanding the changes in the conditions. The Court quoted from the *Monticello Case*, 90 Md. 416, in reference to the objection that the act in question takes one man's property to pay the debt of another, where it was shown that it was not a valid objection, and it was stated that it was not entirely a new method in this State, referring to the statute for the tax upon shares of stock required to be paid by corporations, and also to section 66 (now 71) of article 81 of the Code, requiring the tenant or person holding any leasehold estate to pay the taxes upon the demised premises "and shall have his action against the landlord for the sum so paid, or may deduct the same out of the rent reserved, unless otherwise agreed between the lessor and lessee." Judge Alvey said of that, in *Phila., W. & B. R. R.* v. *Appeal Tax Court*, 50 Md. 411: "This provision was intended as a means of facilitating the collection of taxes, there being many cases where the landlord might not be known, or

might be absent." JUDGE PEARCE quoted with approval what JUDGE COOLEY said in his work on taxation : "Statutes sometimes provide that tangible personal property shall be assessed wherever in the state it may be, either to the owner himself, or to the agent or other person having it in charge; and there is no doubt of the right to do this, whether the owner is resident in the state or not." MR. JUSTICE BREWER quoted that same language in delivering the opinion in the *Carstairs case,* in 193 U. S. JUDGE PEARCE said, on pages 506 and 507 of 95 Md., all that is necessary to say about the hardship of such cases : "Nor can we regard it as a hardship upon the distiller that he should be required to pay this tax in consideration of the lien given for its repayment. As was said in the Monticello Case the purchaser of the warehouse certificate is chargeable with knowledge of what the statute provides, and it is thus made his duty to furnish the distiller with the necessary funds for the payment of this tax when demandable from the distiller. The owner of the certificate has *actual* knowledge of the quantity of spirits belonging to him in the distiller's hands, and the statute gives him *constructive* notice of the time when the tax is payable. Upon application to the distiller therefore at the proper time, he can learn the amount of the tax payable by him thereon, and upon his failure to remit to the distiller, the latter may enforce his lien, and it is no legal objection to the validity of the law that the enforcement of the lien may be attended with some delay and that the costs incurred must await the completion of this process."

MR. JUSTICE BREWER also said in that case in 193 U. S. 10 : "That under the Federal legislation distilled spirits may be left in a warehouse for several years, that there is no specific provision in the statute in question giving to the proprietor who pays the taxes a right to recover interest thereon, and that for spirits so in bond negotiable warehouse receipts have been issued, do not affect the question of the power of the State. The State is under no obligation to make its legislation conformable to the contracts which the pro-

prietors of bonded warehouses may make with those who store spirits therein, but it is their business, if they wish further protection than the lien given by the statute, to make their contracts accordingly."

The learned judge below cited *Hartman* v. *Greenhow*, 102 U. S. 684, as an analagous case to this, but JUDGE PEARCE said on page 504 of 95 Maryland that there was no analogy or similarity between that case and the one he was considering, which arose under this statute. In answer to the contention that there was a great and fundamental distinction to be observed between the relation of the distiller to his vendee and that of the corporation to its stockholder, in that the distiller has no funds out of which he can pay the tax, whereas, when the corporation pays the tax due from its stockholder, it pays with money of the stockholder, JUDGE PEARCE said: "But this contention will not bear analysis. In *New Orleans* v. *Houston*, 119 U. S. 265, where a tax assessed upon the shares of stockholders was required to be paid by the corporation, which was entitled to charge the same to the account of the stockholder, and to collect it from him, the same theory was urged in objection as is here presented, but the Court said: 'This payment is to be made irrespective of any dividends or profits payable to the shareholder out of which it could be repaid.' "

But there is little, if anything, which can be said in favor of the appellees' contention which has not already been answered not only by us, but by the Supreme Court of the United States. It may be, and probably is, a little more inconvenient now for the warehouseman to be reimbursed for what he pays, if the owner of the warehouse certificate is dishonest, or unable to pay except through the sale of some of the whiskey for which he is taxed, but it is looking far beyond the facts to say that he may not be able to recover what he pays out for years, or at least for a long time. There is not much danger, if any, of that, especially if the warehouseman manifests any desire to do what the law requires of him, and other warehousemen, to pay for the liquors in their

possession. There is nothing in articles 15 and 23 of the Maryland Bill of Rights to support the appellees' contention, and we feel equally certain that there is nothing in our conclusion contrary to the Fourteenth Amendment of the Constitution of the United States.

It follows that the order of the lower court must be reversed in each case.

> *Order of the court in the case of State Tax Commission vs. the Melvale Distillery Company of Baltimore County reversed, and the petition and appeal from the action of the State Tax Commission of Maryland dismissed, the appellee to pay the costs above and below, in that case.*
>
> *Order of the court in the case of the State Tax Commission of Maryland vs. Stewart Distilling Company reversed, and the petition and appeal from the action of the State Tax Commission of Maryland, dismissed, the appellee to pay the costs, above and below, in that case.*