**E. C. ATKINS & CO. v. DUNN, County Auditor, et al.**

Circuit Court of Appeals, Seventh Circuit. January 11, 1930.

Rehearing Denied April 8, 1930.

No. 4205.

Louis B. Ewbank and Joseph J. Daniels, both of Indianapolis, Ind., for appellant.

Wm. Thompson and William Bosson, both of Indianapolis, Ind., for appellees.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. On a prior appeal from a decree of dismissal of the bill herein for want of jurisdiction appearing on its face, this court, out of abundance (possibly overabundance) of caution, deeming it better that, before final determination, full opportunity be afforded for presenting all the facts, reversed the decree and remanded the cause. 28 F.(2d) 5.

Thereupon the cause was heard on stipulated facts, resulting in a decree dismissing the bill for want of equity.

The property of appellant and of about 600 other corporations and individuals of Marion county, Ind. (all of whom we denominate "Class A"), was, with a few exceptions, under the tax laws of Indiana assessable by, and in the year 1919 was assessed by, the Marion county board of review subject to review and reassessment by the Indiana state board of tax commissioners. The property of the county's other taxpayers (about 120,000, whom we designate "Class B") was assessable by the township officers, and was so assessed for 1919. The state board of tax commissioners, having power also to review assessments upon class B property, ordered a horizontal increase of the assessed value of class B property of 20 per cent. to 50 per cent. Following controversy and litigation, the order of the state board was held to be void, Fesler, Auditor, v. Bosson, 189 Ind. 484, 128 N. E. 145, and the Indiana Legislature enacted a statute pursuant to which the state board adopted and certified to the Marion county board of review certain "conclusions," whereupon that board, on August 13, 1920, ordered a horizontal increase of 20 per cent. to 50 per cent. in assessments on class B property. Both classes paid their

taxes, levied on the basis of the assessments as they then stood.

Certain of class B taxpayers thereupon presented to the Marion county board of county commissioners, which is by statute authorized to receive and pass upon demands against the county, claims for refund of so much of their tax paid as was predicated on the horizontal increase in assessment; and upon denial of the claims by the Marion county commissioners appeal was taken to the court, and the Indiana Supreme Court, affirming the state circuit court, held that so much of the tax as was predicated on the order of horizontal increase was unlawfully levied and collected, and that refund thereof should be allowed. Board of Commissioners of Marion County v. Western Electric Co., 198 Ind. 417, 153 N. E. 177. Bosson v. Lemcke, 192 Ind. 668, 137 N. E. 551, is to like effect.

Evidently assuming that these adjudications would require the making of similar refund to all class B taxpayers, the county commissioners caused to be printed many thousands of blanks for use of taxpayers in filing their claims for refund. Up to December 28, 1928, nearly 16,000 of such claims, aggregating nearly $3,000,000, had been filed, of which 10, aggregating about $8,500, had been allowed, and, of these, 3, aggregating about $3,700, for which judgments of courts had been rendered, were paid. Upon the commencement of this action, the county commissioners announced that no more of such claims would be considered during its pendency, and none others have been considered or allowed; and the county commissioners employed lawyers to resist such claims.

It is appellant's contention that, because the claimants for refund failed to register complaint of the increased assessment, and failed to make application for rehearing, or to appeal, as specified in the Indiana refunding statute, they are not entitled to any refund, Burns' Ann. Ind. Stats., Revision of 1926, § 14376; and that, if nevertheless the refunds are allowed and paid, it will be taking the property of class A taxpayers to pay class B claimants, and that thereby appellant and others of class A will, by the action of the state, be deprived of their property without due process of law, and be denied the equal protection of the laws as secured by section 1 of the Fourteenth Amendment to the Federal Constitution. This is the only contended basis for bringing the action in the federal court.

Although in briefs and argument there is frequent reference to the proposed taking of money raised by taxation of all property, for payment to those comprising only the claimants in class B, there is really no contention that reaches back to include the conditions out of which the claims for refund arose. The judgment of the state court invalidating the horizontal increase in assessment of class B is not here questioned, nor is the judgment of invalidity of so much of the tax as is predicated on the horizontal increase.

Presumably the money derived through this unlawful assessment was employed for the benefit of all the taxpayers—of both classes—and it is apparent there would be nothing inherently unjust or inequitable to require the entire body of taxpayers to restore to those who paid them the sums thus unlawfully taken from them and applied to the benefit of all. To be sure, there would be incidental cases where some of the burden might fall on some taxpayers who were not such at the time of the unlawful assessment. But this is always so, in some degree, where any repayment or refund is made out of revenues assessed and collected subsequent to the time when the unlawful payment was exacted. Such inevitable, incidental, and exceptional difficulties and embarrassments would not of themselves dominate the form, kind, or forum of relief from such unlawful exactions.

And so appellant's contention rests in no degree on any basic inequity of the claims for refund, but on the alleged failure of the claimants to comply with statutory requirements and prerequisites alleged to be necessary to authorize refunds.

Because appellant fears that the county commissioners will allow these refunds in spite of the fact that objection to the assessment was not registered, as in the statute specified, appellant insists that it is threatened with deprivation of its property without due process of law. The contention is not tenable. The Indiana statutes make provision for filing claims for refund, and for appeal to the Indiana courts by any person not satisfied with the conclusion of the board. Burns' Ann. Ind. Stats., Revision of 1926, §§ 5969, 5975.

With this opportunity for judicial investigation and determination of claims for refund, it cannot be said that the preparation of the county board for facilitating the presentation of claims, or even a declared intention of allowing them, threatens any person, deeming himself adversely interested in their

allowance, with deprivation of property without due process of law.

Where the law of the state affords ample opportunity to question the amount and validity of an assessment before administrative tribunals and courts, deprivation of property without due process of law, or denial of equal protection of the laws, does not appear. Keokuk Bridge Co. v. Salm, 258 U. S. 122, 42 S. Ct. 207, 66 L. Ed. 496; Wells, Fargo & Co. v. Nevada, 248 U. S. 165, 39 S. Ct. 62, 63 L. Ed. 190.

"Due process of law does not assure to a taxpayer the interpretation of laws by the executive officers of a state as against their interpretation by the courts of the state, or relief from the consequences of a misinterpretation by either." Thompson v. Kentucky, 209 U. S. 340, 28 S. Ct. 533, 536, 52 L. Ed. 822. Also Chicago Life Ins. Co. v. Cherry, 244 U. S. 25, 37 S. Ct. 492, 61 L. Ed. 966; Central Land Co. v. Laidley, 159 U. S. 103, 16 S. Ct. 80, 40 L. Ed. 91; Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616.

It was said in Owensboro Water Works Co. v. Owensboro, 200 U. S. 38, 26 S. Ct. 249, 252, 50 L. Ed. 361: "It cannot be that the acts of a municipal corporation are wanting in the due process of law ordained by the 14th Amendment, if such acts, when done or ratified by the state, would not be inconsistent with that amendment." Surely it would have been competent for the state to authorize just refunds without the condition of claimants having registered objection to the assessment, and this would in no manner have transgressed the Fourteenth Amendment.

In Defiance Water Co. v. Defiance, 191 U. S. 184, 24 S. Ct. 63, 67, 48 L. Ed. 140, federal jurisdiction was invoked upon the assertion that, if an injunction granted in the state court should be made perpetual, it would involve a violation of the Fourteenth Amendment. The Supreme Court there said: "The state courts are perfectly competent to decide Federal questions arising before them, * * * (citing cases). And, we repeat, the presumption is in all cases that the state courts will do what the Constitution and laws of the United States require. (Citing cases.) If error supervenes, the remedy is found in § 709 of the Revised Statutes [28 USCA § 344]."

■ What has been said of due process applies as well, in the main, to the contention of denial of equal protection of the laws. The record does not disclose any situation of a systematic, purposeful discrimination against appellant in the administration of the law

for refunds as is intended or calculated to deprive it of constitutional protection. The fact that many claimants are involved, upon one hand, and that there are many in the class with appellant who are affected by the allowance of the claims, does not tend to indicate a denial of the equal protection of the laws. If there were involved but a single claimant, for refund of a comparatively small sum, it would scarcely be contended that a violation of the Fourteenth Amendment was thereby threatened. It is not different though the claimants be many and the aggregate amount large.

Even if it be assumed that the Indiana courts had already decided that one who failed to make timely objection to the assessment subsequently held void may have refund of so much of the tax paid as is predicated on the void assessment, and that there is no likelihood that these courts will decide otherwise, this would not indicate transgression of the Fourteenth Amendment. Indeed, in appellant's reply brief it is asserted that the Indiana cases "do not decide anything whatever as to taxes being recoverable where no complaint was made by application for a rehearing or by appeal." And so it would appear that the foundational proposition asserted by appellant, viz., the invalidity of the claims for refund, is an open question in the Indiana courts. It is, in any event, a question peculiarly within the province of those courts to decide. If, as pointed out in the last cited case, it should develop in the course of litigation in the state courts that appellant's federal constitutional rights are transgressed, correction might be afforded by the United States Supreme Court. U. S. Code, title 28, § 344 (28 USCA § 344).

But appellant strenuously urges that the statutory course is totally inadequate to protect appellant's rights, in that to follow it would require appellant, and each of the others similarly situated, to appear in each case and object to the allowance of the claim for refund, and, if nevertheless allowed, to prosecute the statutory appeal to the court, and in each case give a bond; that this would require as many appearances, bonds, and contests as there are claims for refund, would necessitate constant vigilance to keep informed of what claims are presented to the board, and the disposition made of them, and entail such labor and expense as would make the statutory remedy practically prohibitive.

This is at least plausible and is probably true, and bears strongly on the propriety of a class action in equity. But due process and equal protection of the laws may be afforded

through equity as well as at law, and the courts of Indiana, in a proper case, are not less qualified to afford equitable relief than are the federal courts. Indeed, in Fesler v. Bosson, 189 Ind. 484, 128 N. E. 145, supra, the action in equity was justified as being more efficient than the remedy at law, to prevent a multiplicity of actions. Appellant's right to relief in equity has no bearing on the contention of a threatened invasion of its rights under section 1 of the Fourteenth Amendment.

We are satisfied that this record discloses no present or threatened invasion of appellant's federal constitutional rights, and so on this ground the decree of the District Court dismissing the bill must be, and it is, affirmed; but the dismissal must be, and it is hereby directed to be, without prejudice to appellant's right to seek administrative, judicial, or other relief touching these matters, otherwise than through institution of suit in a federal court. Neither party shall recover costs in this court.