## SNOWDEN v. HUGHES et al.
### No. 7986.

Circuit Court of Appeals, Seventh Circuit.
Dec. 24, 1942.
Rehearing Denied Jan. 30, 1943.

Joseph E. Snowden, W. Robert Ming, Jr., and Heber T. Dotson, all of Chicago, Ill., for appellant.

Herbert M. Lautmann, Isaac E. Ferguson, and George F. Barrett, all of Chicago, Ill. (Frank C. Bernard, of Chicago, Ill., and William C. Wines, Asst. Atty. Gen., of counsel), for appellees.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This is an appeal from a judgment dismissing plaintiff's complaint for lack of jurisdiction. The suit was brought to recover $50,000 damages for an asserted illegal refusal to certify that plaintiff had been nominated as a candidate for representative in the general assembly of Illinois. There is no diverse citizenship and the jurisdiction must depend upon the presence of a federal question. Plaintiff claimed the right to maintain the suit was conferred upon him by § 24, subdivisions 1, 12, and 14, of the Judicial Code, 28 U.S. C.A. § 41(1), (12), (14).

The complaint alleged plaintiff was one of several candidates at the April 9, 1940, Republican primary election held in the third senatorial district of Illinois, for the purpose of electing nominees for the office of representative in the general assembly of Illinois; that there were to be two nominees elected; that under the laws of Ill-

inois, the two candidates receiving the highest number of votes were to be declared the nominees; that at the said primary election, the returns were made to the county clerk of Cook County, duly authenticated and certified by the canvassing board of Cook County, Illinois, and forwarded to the secretary of state of Illinois, showing that plaintiff and one Jenkins were the two candidates receiving the highest number of votes for nomination for representative in the general assembly on the Republican ticket; that the tabulated statement of returns made to the secretary of state by the county canvassing board of Cook County was to be canvassed by the state primary canvassing board, proclamation of the result thereof made, and certificates of nomination issued to candidates appearing to have received the highest number of votes; that the official vote of the primary election, as duly published by the secretary of state of Illinois, showed plaintiff as being one of the two candidates receiving the highest number of votes cast; that the governor, secretary of state, and state treasurer—members of the state primary canvassing board—are charged with the duty of canvassing the tabulated statement of returns, proclaiming the results, and issuing the certificate of nomination; that the defendants, while acting as the duly designated officers of the state primary canvassing board, issued their official proclamation designating only one nominee for the office of representative in the general assembly and illegally failed and refused to certify that plaintiff had been duly nominated as a candidate.

The complaint charged that the unlawful acts on the part of the defendants were done in furtherance of a conspiracy between the defendants and were an unequal administration of the laws of Illinois—a denial to plaintiff, by the State of Illinois, of the protection of the Fourteenth Amendment to the Constitution of the United States, and deprived plaintiff of the rights, privileges, and immunities secured by the Constitution of the United States and the laws of the United States.

Plaintiff claims that the defendants as ministerial officers failed and refused to comply with the law, and in so doing, prevented plaintiff from enjoying the equal protection of the laws of Illinois and of the United States, and have been guilty of conduct which deprived him of rights guaranteed to him by the Fourteenth Amendment to the Constitution of the United States; and that he, therefore, has a cause of action under the Civil Rights Act of April 20, 1871, 17 Stat. 13, now § 1979, Revised Statutes, 8 U.S.C.A. § 43, which provides: "Every person who, under color of any statute * * * of any State * * * subjects * * * any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law * * *."

It is well settled that privileges and immunities of citizens of the United States are only such as arise out of the nature and essential character of the national government, or are specifically granted or secured to all citizens or persons by the Constitution of the United States, Twining v. State of New Jersey, 211 U.S. 78, 97, 29 S.Ct. 14, 53 L.Ed. 97.

The argument is made that the privileges and immunities of the citizens of the United States include the right to an equal opportunity of being elected to serve in the legislative councils of the state, and in support of this contention plaintiff cites the cases noted below.[1]

This case is very different from the cases cited. In the Swafford and Wiley cases, the right of the plaintiff alleged to have been infringed was the right to vote in an election for a member of the national house of representatives. It was held that a federal question was involved, because the right to vote for a member of Congress was dependent upon the Constitution and the laws of the United States.

In the Lane case, a Negro citizen complains of a denial of the right to vote, in direct violation of the Fifteenth Amendment; and in the Hague case, federal jurisdiction was bottomed on plaintiff's claim that certain ordinances relating to public meetings, deprived the plaintiff of the right to peaceful assembly and free

[1] Swafford v. Templeton, 185 U.S. 487, 22 S.Ct. 783, 46 L.Ed. 1005; Wiley v. Sinkler, 179 U.S. 58, 21 S.Ct. 17, 45 L.Ed. 84; Hague v. Committee for Industrial Organization, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423; Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281; and Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077.

speech secured by the Fourteenth Amendment; while the Kline case was based on diversity of citizenship, with no claim that the matter in controversy arose under the Constitution and the laws of the United States.

Section 454 of the Elections Act, c. 46, Ill.Rev.St.1941, provides that the candidates receiving the highest number of votes shall be declared nominated, and § 456 of the Act provides: "Tabulated statements of the returns of the primary for the nomination of candidates * * * shall be made to the Secretary of State, canvassed by the State Primary Canvassing board, proclamation of the result thereof made, and certificates of nomination issued, * * * and the election of any person nominated * * * may be contested·by filing with the clerk of the circuit court a petition in writing * * *."

In our case, the plaintiff does not contend that the Elections Act of Illinois, governing primary elections, is in any respect repugnant to the Constitution of the United States; on the contrary, he admits that the statute under which the defendants derived their authority as members of the state primary canvassing board is fair, but he claims the actual administration of the law fell far short of the level required by the Fourteenth Amendment, and he insists that the defendants, in refusing to issue to him a certificate of nomination, denied him the equal protection of the laws.

■ It has always been accepted that the Fourteenth Amendment does not apply to the acts of individuals, State of Virginia v. Rives, 100 U. S. 313, 25 L.Ed. 667; United States v. Harris, 106 U. S. 629, 1 S.Ct. 601, 27 L.Ed. 290; that the protection it offers is only against the acts of states. Established as this limitation is, the problem of determining what action is state action within the meaning of the amendment is not always easy. To be sure, in every case the initial question is whether the action was by a state instrumentality, but the controlling question is whether sufficient state sanction was given to such action to make it the action of the state for the purposes of the Fourteenth Amendment, since "Many acts done by an agency of a state may be illegal in their character when tested by the laws of the state, and may, on that ground, be assailed, and yet they cannot,

for that reason alone, be impeached as being inconsistent with the due process of law enjoined upon the states. The 14th Amendment was not intended to bring within Federal control everything done by the state or by its instrumentalities that is simply illegal under the state laws, but only such acts by the states or their instrumentalities as are violative of rights secured by the Constitution of the United States." Owensboro Water Works Co. v. City of Owensboro, 200 U.S. 38, 47, 26 S.Ct. 249, 252, 50 L.Ed. 361.

■ In Barney v. City of New York, 193 U.S. 430, 24 S.Ct. 502, 48 L.Ed. 737, the court held that where the act complained of was forbidden by the state legislature, it could not be said that the act was that of the state for the purposes of the Fourteenth Amendment, and the court denied the jurisdiction of the District Court to entertain the cause. This decision controls the instant case, for it appears on the face of the plaintiff's complaint that the defendants' acts were forbidden by the Illinois statute and that these illegal acts were the gravamen of the plaintiff's complaint.

We recognize that there is some question as to the current value of the Barney case as authority. In the light of subsequent Supreme Court cases,[2] there can be no doubt that the broad language used in the Barney opinion is no longer accurate. For example, since Raymond v. Chicago Union Traction Co., 207 U.S. 20, 28 S.Ct. 7, 52 L.Ed. 78, 12 Ann.Cas. 757, the Supreme Court has authorized the federal courts to take jurisdiction on the ground that the decision of a state administrative tribunal was contrary to the Fourteenth Amendment. Nor need the federal courts refrain from exercising jurisdiction under the amendment until the highest court of a state has determined whether the complained of enforcement of the state statute has violated the constitutional provision of the state which chanced to be similar to the Fourteenth Amendment. Home Tel. & Tel. Co. v. Los Angeles, supra. These cases and others in which the Barney case is discussed, evidence the trend of the court to subject to the federal courts' scrutiny the actions of the states before such actions have been sanctioned by the highest authority of the state, but the narrow holding of the Barney case still stands as a matter

---

[2] The Barney case was modified in Home Tel. & Tel. Co. v. Los Angeles, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510.

of law and as a matter of sound federal jurisprudence. We conclude that when the act complained of is plainly and clearly in violation of a state law, as in our case, it is not an act of the state for the purposes of the Fourteenth Amendment

The judgment is affirmed.