**BRANDYWINE AFFILIATE, NCCEA/DSEA, et al., Plaintiffs,**

**v.**

**BOARD OF EDUCATION OF the BRANDYWINE SCHOOL DISTRICT, et al., Defendants.**

**Civ. A. No. 82–239.**

United States District Court, D. Delaware.

Jan. 26, 1983.

---

Sheldon N. Sandler, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiffs.

Henry N. Herndon, Jr., and David H. Williams, Morris, James, Hitchens & Williams, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Presently before the Court is a civil rights action brought under 42 U.S.C. § 1983 for declaratory and prospective injunctive relief. Plaintiffs, Brandywine Affiliate-NCCEA/DSEA, Christina Affiliate-NCCEA/DSEA, Colonial Affiliate-NCCEA/DSEA, and Red Clay Affiliate-NCCEA/DSEA, are labor organizations that are the exclusive negotiating representatives of school teachers in their respective school districts in northern Delaware.

Plaintiffs, Michael F. Epler, Laura L. Shepard and Betty F. Edwards, are tenured teachers who claim to have been laid off as a result of decreased enrollment or a decrease in education services by the defendants—the Boards of Education of the Brandywine, Christina, Colonial and Red Clay School Districts.

The gravamen of the complaint is that the defendants, by failing to observe termination hearing procedures set forth in 14 *Del.C.* § 1413 [1] and § 1420,[2] have, without due process of law, deprived the plaintiffs of a property interest in violation of the Fourteenth Amendment of the United States Constitution. Plaintiffs also allege that defendants' actions constitute a violation of the equal protection clause of the Fourteenth Amendment.[3] Alternatively, the plaintiffs have asserted a pendent state claim that the defendants' failure to follow termination procedures prescribed by 14 *Del.C.* §§ 1413 and 1420 violated state law. The plaintiffs seek an injunction directing the defendants to hold termination hearings in accordance with 14 *Del.C.* §§ 1413 and 1420. Jurisdiction is present pursuant to 18 U.S.C. §§ 1331 and 1343(3).

Presently before the Court are cross-motions for summary judgment. The facts underlying the plaintiffs' claims are not in dispute. Teachers employed in school districts within Delaware can only be dis-

1. 14 *Del.C.* § 1413 provides:

In the event that a teacher so notified shall within 10 days after the receipt of written notice of intention to terminate services request in writing an opportunity to be heard by the terminating board, the board shall set a time for such hearing to be held within 21 days after the date of receipt of said written request, and the board shall give the teacher at least 15 days' notice in writing of the time and place of such hearing. The hearing shall be conducted by a majority of the members of the board and shall be confined to the aforementioned written reasons as stated in the board's written notice of the board's intention to terminate the teacher's services. The conduct of such hearings and such rules of procedure as may be found necessary shall be left entirely to the discretion of the board provided that:

(1) The teacher shall have the option to indicate whether or not he wishes the hearing to be public, by so stating in his written request for a hearing; otherwise the hearing shall be private;

(2) The teacher may be represented by counsel;

(3) The teacher and the board may subpoena witnesses. Subpoenas shall be issued by the secretary of the board upon written request, and such subpoenas shall be directed to the sheriff of the county where the witness resides or is employed within the State, and, upon service of such subpoena, the witness shall be compelled to appear subject to the same penalties for failure to appear that govern subpoena proceedings before the Superior Court of the State;

(4) The teacher and the board and counsel for each may cross-examine witnesses;

(5) Testimony before the board shall be under oath;

(6) The testimony to be heard shall be confined to the reasons stated in the written notice of intent to terminate service. Any evidence shall be admissible during the hearing which is adjudged by the board to be pertinent to the reasons contained in the written notice which the teacher received and which stated the reasons for dismissal;

(7) A stenographic record of the hearing shall be taken and prepared by a qualified court stenographer and paid for by the board, and shall be supplied to the teacher and the board within 10 days following the conclusion of the hearing;

(8) The decision of the board shall be submitted in writing to the teacher within 15 days following the conclusion of the hearing;

(9) If the decision is in favor of the teacher, he shall be fully reinstated and shall receive all salary lost as a result of his temporary dismissal or suspension.

2. 14 *Del.C.* § 1420 provides:

Termination of any teacher's services during the school year shall be for 1 or more of the following reasons: Immorality, misconduct in office, incompetency, disloyalty, neglect of duty or willful and persistent insubordination. Such teacher shall be given the same opportunity to be heard and right of appeal as provided in §§ 1412, 1413 and 1414 of this title, and the board shall give notice in writing to such teacher of its intention to terminate the services of such teacher at least 30 days prior to the effective date of termination. Such written notice shall state the reasons for such termination of services. The board shall have the power to suspend any teacher pending a hearing if the situation warrants such action.

3. Plaintiffs' equal protection claim will be addressed in the Court's discussion of the plaintiffs' due process claim in Part III, *infra.*

missed for cause[4] after receiving notice and a hearing.[5] State law governs the conduct of the termination hearings.[6] Hearings to terminate a teacher either during the school year or at the end of the school year are governed by 14 *Del.C.* §§ 1413 and 1420. Prior to 1978, teacher termination hearings were conducted by and before the local boards of education in the State's school districts.

However, in 1978 termination procedures changed in what became one school district encompassing most of the geographical area of New Castle County, Delaware, and one-half of the public school children of the State of Delaware. In *Evans v. Buchanan,* 447 F.Supp. 982, 1014–1039 (D.Del.1978), aff'd, 582 F.2d 750 (3d Cir.1978), *cert. denied,* 446 U.S. 923, 100 S.Ct. 1862, 64 L.Ed.2d 278 *reh'g denied,* 447 U.S. 916, 100 S.Ct. 3004, 64 L.Ed.2d 865 (1980), a school desegregation case, this Court ordered the consolidation of eleven school districts located in New Castle County. In *Evans,*[7] the Court entered an Order which modified certain state statutes with respect to governance of the court-created consolidated district, the New Castle County School District ("NCCSD"). One such change altered the pre-existing termination hearing procedures in the newly consolidated district. In brief, the statutory language was modified so that this district's board of education would be relieved from any possible statutory obligation to conduct termination hearings—an issue presently before the Court. In *Evans,* the Court did not consider whether termination procedures could be modified without modifying 14 *Del.C.* § 1413. The NCCSD adopted the practice of appointing hearing officers to conduct termination hearings who then made recommendations to the board. The board would then review the record of the proceedings before the hearing officer, the report of the officer and any written response of the teacher under review and then render a final employment decision. (Doc. 5, p. 2, Ex. A).

In July, 1980, the General Assembly of the State of Delaware authorized the State Board of Education ("State Board") to reorganize the New Castle County School District. 14 *Del.C.* § 1003. Following passage of this legislation, the State Board devised an acceptable reorganization plan that divided the New Castle County School District into the four school districts over which the defendants now preside. In June, 1981, this Court approved the four-district plan of the State Board of Education. C.A. Nos. 1816–22, Order (D.Del. June 2, 1981).

The four school districts involved in this suit are the successors to the NCCSD. With respect to conduct of teacher termination proceedings, each of the four school boards have instituted procedures based upon the modified procedures utilized by the now nonexistent NCCSD.[8] Defendants have stated at oral argument that they have and will continue to follow such procedures.

At issue in this case is whether the four defendant school boards are authorized under this Court's Order in *Evans v. Buchanan* or under the laws of the State of Delaware to have adopted and utilized the modified hearing procedures originally instituted by the NCCSD. Plaintiffs come to federal court seeking a definitive ruling on the effect of this Court's orders upon the termination hearing procedures utilized by the defendants. Plaintiffs also present a federal constitutional claim alleging that the defendants' deviation from statutorily prescribed hearing procedures constitutes a deprivation of a constitutionally protected interest without due process of law. Alternatively, the plaintiffs seek to have the Court exercise pendent jurisdiction over the state claim that the defendants' deviation from statutorily prescribed procedures is in violation of state law.

4. 14 *Del.C.* §§ 1411, 1420.

5. 14 *Del.C.* §§ 1410–20.

6. 14 *Del.C.* §§ 1413, 1420.

7. C.A. Nos. 1816–1822, Order, Attachment 1, B–10 (D.Del. Jan. 9, 1978).

8. Doc. 5, Ex. A, B, C, D.

## I. The Effect of the Court Orders in *Evans v. Buchanan*

■ The effect of this Court's orders in *Evans v. Buchanan* with respect to the issue presented in this case cannot be fully appreciated unless one keeps in mind both the central focus of that case and the chronological interface of court orders and state legislative acts. Both will be briefly reviewed.

*Evans v. Buchanan* was concerned with the constitutional rights of all public school children within the geographic desegregation area. Accordingly, during the course of proceedings in *Evans v. Buchanan,* this Court stated that "it must be remembered it is the constitutional right of students, not ... teachers, that must be remedied," *Evans v. Buchanan,* 435 F.Supp. 832, 841 n. 30 (D.Del.1977), and that "this lengthy litigation concerns the constitutional rights of children, not ... teachers." *Evans v. Buchanan,* C.A. Nos. 1816–1822, slip op. at 6 (D.Del. Dec. 22, 1977).

In January, 1978 as part of its Remedy Order, this Court, as a matter of administrative necessity, ordered that all references to the board of education be deleted from 14 *Del.C.* § 1413. *Evans v. Buchanan,* C.A. No. 1816–22, Order, Attachment 1, B–10 (D.Del. Jan. 9, 1978). Operating under the court-modified statute the NCCSD appointed hearing officers to conduct tenured teacher termination hearings. Subsequently, the Delaware General Assembly by amending Chapter 10 of Title 14 authorized the State Board of Education to reorganize the NCCSD.[9] At the same time that the Delaware General Assembly passed the legislation enabling the State Board to create four districts within the geographical desegregation area it also provided that "the reorganized ... districts shall be organized and administered according to the title [14]." 14 *Del.C.* § 1004.[10] More specifically to the point of teacher termination, the Delaware legislature provided that nothing in Chapter 10 "shall be deemed to alter or affect in any way ... Chapter 14 of this title." 14 *Del.C.* § 1005.[11]

Pursuant to this statutory authorization, the State Board of Education created four districts to replace the single NCCSD. In June, 1981, the Court approved the implementation of a four-district reorganization of the New Castle County School District as authorized by State law, 14 *Del.C.* c. 10 and modified the Remedy Order of January 9, 1978 by ordering, in part that:

The provisions of Attachment Number 1 to the Court's January 9, 1978 Order dealing with Title 14 of the Delaware Code in the context of desegregation shall apply

---

**9.** 14 *Del.C.* § 1028(k) expressly provided:

(k) During the period January 1, 1980, through August 31, 1981, the State Board of Education may divide any school district created by order of a federal court pursuant to this section; ....

The NCCSD was the only school district within the State of Delaware created by federal court order.

**10.** 14 *Del.C.* § 1004 states in full:

Whenever any school district is reorganized either by consolidation of whole or parts of whole districts into a new district or districts or by division of a district or by a combination of consolidation and division of districts, the State Board of Education shall set the date upon which the implementation of the reorganized district or districts shall occur, after which date the reorganized district or districts shall be organized and administered according to this title and the school board of the former school district shall be dissolved.

**11.** 14 *Del.C.* § 1005 states in full:

Nothing in this chapter shall be deemed to alter or affect in any way either Chapter 14 of this title or the right to terminate the employment of any school employee to whom Chapter 14 of this title does not apply, for cause or for any other reasons not inconsistent with the purpose of this section, except that, for purposes of § 1403 of this title, a teacher as defined in § 1401 of this title who is and has been continuously employed among a district created by a division under subsection (k) of § 1028 of this title, the district divided under subsection (k) of § 1028 of this title and one of its component former school districts shall be deemed to have been continuously employed by the new district to which he or she has been assigned for the entire term of his or her continuous employment in the several school districts.

to the New Boards, except to the extent that such provisions may be inconsistent with subsequently enacted statutes of the State of Delaware.[12]

From the above chronological interface of federal court orders and state legislation, defendants vigorously urge the state legislature knew of this Court's Order modifying Chapter 14 and the NCCSD's practice of using hearing officers for teacher terminations and therefore when it provided that nothing in amended Chapter 10 shall be deemed to alter or affect Chapter 14, the General Assembly was conferring its approval of this Court's 1978 Order changing Chapter 10 and the consequent use of hearing officers. Any other construction, argues defendants, would be violative of the rule of statutory construction that a legislature is presumed not to modify existing law by subsequent legislation unless explicitly so stating in the subsequent legislation.

Defendants' argument would be more persuasive if it comported with reality. In the actual world of teacher terminations in the State of Delaware, two procedures were being followed. In the Court-created NCCSD, hearing officers were employed. In the remainder of the school districts in the state, the respective district school boards continued the uniform preexisting practice of the district school boards presiding over and conducting teacher termination hearings. Thus, at the time of the 1980 amendment to Chapter 10, there was in reality two versions of Chapter 14—the Court-ordered version applicable to only one school district and the legislative version applicable to all other districts. Nothing in the legislation even remotely suggests that the Delaware General Assembly wished to continue this dual state of affairs created in the first instance by an unpopular federal court order. On its face, it strains credulity to attribute to the Delaware legislature an intent to adopt the federal court version of Chapter 14, specifically section 1413 of that chapter. To attribute this intent to the Delaware legislature via a canon of statutory construction becomes even more improb-

able when it is remembered that any one of the four districts created by the State Board was not appreciably larger, in terms of total pupils (and thus teachers), than the larger districts in the State of Delaware prior to this Court's 1978 Order.

Accordingly, the Court holds that the Delaware General Assembly, when it provided in 14 *Del.C.* § 1005 that nothing in Chapter 10 "shall be deemed to alter or affect in any way ... Chapter 14 of this title," was referring to its version of Chapter 14. Accordingly, the Delaware legislature intended to adopt section 1413 as set forth in the Delaware Code and not as modified by this Court for use in the defendant school districts. This result is consistent with the command of 14 *Del.C.* § 1004 that the four defendants are to be organized and administered in accordance with Title 14 which includes teacher terminations procedures prescribed in sections 1420 and 1413.

## II. The Pendent State Claim

■ Having determined that this Court's orders in *Evans v. Buchanan* no longer have any effect on the procedures to be followed in teacher termination hearings in the defendant school districts, the claims before the Court are that the defendants' utilization of hearing officers is violative of state law and, alternatively, that the procedures violate the Fourteenth Amendment rights of teachers to due process of law. There is no question that as a matter of judicial power, this Court has pendent jurisdiction over the state claim. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). All that is required is a substantial federal claim and a common nucleus of operative fact between the state and federal claim. *Id.*. The grant of certiorari in *Wakinekona v. Olim,* 664 F.2d 708, *cert. granted,* —— U.S. ——, 102 S.Ct. 2294, 73 L.Ed.2d 1299 (1982), on the issue of whether a procedural rule or statute can create a constitutionally protected liberty or property interest establishes beyond peradventure that a

12. *Evans v. Buchanan,* C.A. Nos. 1816–22, Order at ¶ 1(d) (D.Del. June 2, 1982).

substantial federal claim exists.[13] This question remains unsettled in the Third Circuit Court of Appeals. *Helms v. Hewitt,* 655 F.2d 487, 491 n. 5 (3d Cir.1981), *cert. granted,* 455 U.S. 999, 102 S.Ct. 1629, 71 L.Ed.2d 865 (1982). Further there is no question that the federal and state claims derive from a common nucleus of operative facts.

Resolution of the pendent state claim would obviate the need to adjudicate the constitutional claim. If the defendants' modification of the statutory termination procedures were authorized under state law, then the plaintiffs cannot claim that they have a constitutionally protected interest in the procedure. Nor could they claim that the defendants' actions violated their right to be free from unauthorized and arbitrary deviations from a procedural statute. If the plaintiffs prevail ·on the pendent claim, then there is no need to reach the constitutional issue. In the pendent state law claim the plaintiffs seek prospective declaratory and injunctive relief identical to that sought in the federal constitutional claim. Specifically, the plaintiffs seek a federal court interpretation of 14 *Del.C.* § 1413 [14] that would preclude the four defendant school districts from employing hearing officers during teacher termination hearings.

When confronted with a pendent state claim that would be dispositive of a constitutional issue, the Third Circuit Court of Appeals has stated that a district court should "consider the exercise of pendent jurisdiction with regard to the state law claims before deciding the federal constitutional issue." *Patzig v. O'Neil,* 577 F.2d 841, 851 (3d Cir.1978); *see Pitrone v. Mercadante,* 572 F.2d 98, 100 (3d Cir.) (per curiam), *cert. denied sub nom., Warminster Township, Pa. v. Pitrone,* 439 U.S. 827, 99 S.Ct. 99, 58 L.Ed.2d 120 (1978); *Mahone v. Waddle,* 564 F.2d 1018, 1025–26 (3d Cir. 1977), *cert. denied sub nom., Pittsburg· v. Mahone,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978); *Gagliardi v. Flint,* 564 F.2d 112, 116 (3d Cir.1977), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978).

Among the considerations counseling exercise of pendent jurisdiction are the obvious practical advantages of economy and convenience without unfairness to the litigants. Equally important is adherence to the rule of avoidance of constitutional adjudication. The ordinary rule is that "a federal court should not decide federal constitutional questions where a dispositive nonconstitutional ground is available." *Hagans v. Lavine,* 415 U.S. 528, 547 & n. 12, 94 S.Ct. 1372, 1384 & n. 12, 39 L.Ed.2d 577 (1974); *see Ashwander v. TVA,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter."). The Court of Appeals for the Third Circuit, in addressing the situation where a resolution of a pendent state claim would avoid constitutional adjudication, has adhered to the rule favoring avoidance of constitutional adjudication by "speaking in terms of the course a court 'usually should' take." *Patzig v. O'Neil,* 577 F.2d at 851, *citing, Mahone v. Waddle,* 564 F.2d at 1025–26, *quoting, Gagliardi v. Flint,* 564 F.2d at 114. However, the fact remains that the rule favors, but does not mandate, the avoidance of constitutional adjudication. *Patzig v. O'Neil,* 577 F.2d at 851; *Mahone v. Waddle,* 564 F.2d at 1026. Similarly, the Third Circuit Court of Appeals has expressly stated "[W]e do not hold that where there is a common nucleus of operative facts, state claims must always be appended to the federal claim." *Sparks v. Hershey,* 661 F.2d 30, 33 (3d Cir.1981).

■ The exercise of pendent jurisdiction is left to the discretion of the district court. *United Mine Workers of America v. Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. Where, as in *Hagans v. Lavine,* 415 U.S. at 533, 94 S.Ct. at 1377, a federal statutory claim, not

---

**13.** *See infra* text at Part III.

**14.** *See supra* note 1.

entertainable in federal court, is appended to a constitutional claim, one would expect a bias in favor of exercise of pendent jurisdiction.[15] Similarly, where the question posed is within the specialized competence of a federal court as, for example, the interface of a federal court order and state legislation in response to that order illustrated in the first section of this opinion, treatment of the issue, including state statutory construction, is necessitated by comity and recognition of the undesirability of placing a state court in the position of having to construe a federal court constitutional remedy order. Where the pendent claim involves construction of a state statute and there is no paramount federal interest, other factors could tilt the balance against exercise of pendent jurisdiction.[16]

There are factors present in this case which counsel against the exercise of pendent jurisdiction. While economy and convenience would be served if this Court determined the pendent claim, there would be a minimal loss of economy and convenience if the discrete state law claim were determined in state court. This case has been relatively recently filed,[17] the state law question has not been considered and is strictly a legal issue with little or no factual development required and, if the parties are satisfied with their present effort, briefing is essentially completed. At oral argument the litigants were of the opinion they would have an opportunity to obtain a timely adjudication in the state court if this Court declined to exercise pendent jurisdiction.

Another factor must also be considered. Among the plaintiffs are the four teacher unions in the four defendant districts.[18] Taken together, the four unions and four defendants constitute all the teacher unions and defendant school districts in the geographic desegregation area. They are responsible for educating over one-half of the public school children of the State of Delaware. All that is sought is prospective relief. Given the identity of the litigants and evolving concepts of associational representation and virtual representation, *see* Wright, Miller & Cooper, 18 *Federal Practice and Procedure* §§ 4456–57 (1981 & Supp.1982), the doctrines of res judicata and collateral estoppel could well preclude any state court interpretation of 14 *Del.C.* § 1413.[19] If this were to occur, not only would these parties be deprived of "a surer-footed reading of applicable law," *United Mine Workers of America v. Gibbs,* 382 U.S. at 726, 86 S.Ct. at 1139, but also there would be, in effect, a complete deprivation of a state court interpretation of a state statute. No other school district has utilized hearing officers. Thus, unlike the usual exercise of pendent jurisdiction to construe state law, a state court would not have a later opportunity to correct this or an appellate federal court's error in interpreting state law. Instead, it would take an act of the state legislature.

An additional factor causes the Court to hesitate in exercising its discretion to entertain the pendent claim. The operation of

---

**15.** *See Mahone v. Waddle,* 564 F.2d at 1055 & n. 33 (Garth, J., dissenting). *But see, id.* at 1026.

**16.** Unsettled and difficult questions of state law have been held to justify a court's refusal to entertain pendent state law claims. *See, Moor v. County of Alameda,* 411 U.S. 693, 715–16, 93 S.Ct. 1785, 1798–99, 36 L.Ed.2d 596 (1973). While there is no state court interpretation of 10 *Del.C.* § 1413, one cannot conscientiously say the posed state law issue is complex or difficult.

**17.** The complaint was filed on May 10, 1982.

**18.** At oral argument plaintiffs' counsel candidly conceded the three individual plaintiffs were

named to discourage a challenge to the standing of the union plaintiffs.

**19.** Under the law of Delaware, in assessing the preclusive effect of a federal court judgment, a State court would give the same effect to the judgment as would a federal court. *Bata v. Hill,* 37 Del.Ch. 96, 139 A.2d 159 (Del.Ch.1958); *modified,* 39 Del.Ch. 258, 163 A.2d 493 (1960), *cert. denied,* 366 U.S. 964, 81 S.Ct. 1926, 6 L.Ed.2d 1255 (1964). In a federal court, the res judicata effect of a federal court judgment rendered on a pendent state claim would most likely be governed by the same law governing the pendent state claim and not federal law. *See Albonese v. Emerson Electric Co.,* C.A. No. 81 102, slip op. at 10 (D.Del. Dec. 3, 1982).

public schools is traditionally a state concern. *Goss v. Lopez,* 419 U.S. 565, 578, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975). There is no federal interest in how the pendent state claim is decided. Intervention in the operation of public schools only becomes a federal concern when constitutional or federal rights are at issue as there were in *Evans v. Buchanan.* Now that twelve years of federal court involvement with local school districts[20] has become passive, as a matter of comity, this Court is reluctant to decide a local issue involving the administration of the local school districts where no federal interest is present.[21]

In *United Mine Workers of America v. Gibbs,* 383 U.S. at 726, 87 S.Ct. at 1139, the Court stated that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer footed reading of applicable law." While normally I would opt to decide a pendent state claim in order to avoid adjudication of a constitutional issue, on the basis of the unique factors of this case, I hold that I should not employ my discretion to exercise pendent jurisdiction.

III. The Constitutional Due Process Claim

■ The plaintiffs' constitutional claim is based upon two theories. First, the plaintiffs allege that the defendants' unauthorized modification of termination procedures established pursuant to state law constitutes a deprivation of a property or liberty interest without due process of law. Alternatively, it is alleged that the utilization of unauthorized procedures constitutes a violation of a teacher's Fourteenth Amendment right to be free from arbitrary governmental action. In other words, the defendants violated the plaintiffs' constitutional right to due process of law by not following statutorily mandated procedures.

**20.** While *Evans v. Buchanan* was filed in 1956, the most recent segment of that litigation was initiated in 1971.

**21.** *See supra* text at Part I.

**22.** The Fourteenth Amendment provides in pertinent part:

It is uncontested that plaintiffs collectively treated as tenured teachers have a Fourteenth Amendment[22] protectible property interest in continued employment as that interest is defined in *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The issue is what process is due plaintiffs to protect that interest. Teacher plaintiffs assert that because the Delaware statute, 14 *Del.C.* § 1413, affords them a termination hearing in person before the district school board, it is an infringement of plaintiffs' constitutional due process rights for defendant school boards to delegate their duty to a hearing officer and then to review the record of the hearing prior to their making a termination decision. Defendant school boards contend that they have not abridged plaintiffs' constitutional rights. Defendants urge that the only process due plaintiffs are minimal constitutional due process guarantees. The issue is therefore sharply focused: are plaintiffs entitled as a matter of due process under the Fourteenth Amendment to a termination hearing directly before the board predicated solely upon the procedural requirements of a state statute? Stated more abstractly, the issue is whether the non-compliance of a state agency with state statutory procedural rules constitutes a denial of due process under the Fourteenth Amendment where the state statutory rules provide for requirements in excess of that minimum mandated by the due process clause.

Ordinarily, in analyzing a section 1983 claim alleging a deprivation of liberty or property without due process of law in violation of the Fourteenth Amendment, a court must first determine whether a constitutionally protected liberty or property interest is present. *Board of Regents v. Roth,* 408 U.S. at 569, 92 S.Ct. at 2705.

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any·person within its jurisdiction the equal protection of the laws.

Generally, liberty or property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 577, 92 S.Ct. at 2709. *See Meachum v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976) (liberty interest determined, in part, by state law);[23] *Bishop v. Wood,* 426 U.S. 341 at 344 & n. 6, 96 S.Ct. 2074 at 2077 & n. 6, 48 L.Ed.2d 684 (property interest determined by state law). Both parties concede that teachers in the defendant school districts have a property interest in continued employment.[24]

Having determined that a constitutionally protected interest is involved, the Court must then determine whether the deprivation of this property interest by use of termination procedures utilizing hearing officers comports with the minimum requirements of due process. *See Board of Regents v. Roth,* 408 U.S. at 569–70, 92 S.Ct. at 2705; *Matthews v. Eldridge,* 424 U.S. 319, 332–33, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976); *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The procedural protections that attach to a constitutionally protected interest are defined by federal constitutional standards of due process and not state procedural rules or statutes whether or not those state procedures fall short of, satisfy or exceed the constitutional minimum. *Goss v. Lopez,* 419 U.S. at 574, 95 S.Ct. at 736; *Shango v. Jurich,* 681 F.2d 1091, 1101 (7th

Cir.1982); *Rowe v. Fauver,* 533 F.Supp. 1239, 1246 (D.N.J.1982). Both parties necessarily concede that the defendants' termination procedures satisfy minimum constitutional requirements of due process.

The plaintiffs urge the Court to go one step further. Plaintiffs argue that 14 *Del.C.* § 1413, the statute describing termination procedures, creates a constitutionally protected interest in a procedure that exists independently of the property interest in continued employment. The procedural statute, it is argued, creates a legitimate expectation of a benefit or entitlement— the termination procedure—that stems from an independent source, in this case, state law.

The plaintiffs' argument is not without appeal. The criteria set forth in *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, and *Meachum v. Fano,* 427 U.S. at 226, 96 S.Ct. at 2539, for determining the existence of a property or liberty interest can arguably be applied to a state procedural right. The Circuit Courts of Appeals are divided on whether state procedures having the force and effect of law can themselves be considered as constituting a protectible interest under the Fourteenth Amendment. The Ninth Circuit has concluded that procedural regulations create an interest protected by the due process clause.[25] The First,[26] Second,[27] Sixth[28] and Seventh[29] have held they do not while the Third has left the question open.[30]

**23.** Liberty interests can also be derived from sources other than state law. *Vitek v. Jones,* 445 U.S. 480, 488, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980); *Ingraham v. Wright,* 430 U.S. 651, 672-74, 97 S.Ct. 1401, 1413-14, 51 L.Ed.2d 711 (1977); *Meachum v. Fano,* 427 U.S. at 226, 230, 96 S.Ct. at 2541. However, plaintiffs have limited the source of their interest to state law.

**24.** *See* 14 *Del.C.* § 1411.

**25.** *Wakinekona v. Olim,* 664 F.2d at 711–12.

**26.** *Lombardo v. Meachum,* 548 F.2d 13, 15 (1st Cir.1977).

**27.** *Pugliese v. Nelson,* 617 F.2d 916, 924 (2d Cir.1980); *Cofone v. Manson,* 594 F.2d 934, 938 (2d Cir.1979).

**28.** *Bills v. Henderson,* 631 F.2d 1287, 1298–99 (6th Cir.1980).

**29.** *Shango v. Jurich,* 681 F.2d at 1100.

**30.** "We do not reach the issue whether a failure of state officials to comply with state procedural regulations constitutes a deprivation of federal procedural due process." *Helms v. Hewitt,* 655 F.2d 487, 491 n. 5 (3d Cir.1981). This statement by the appellate court effectively disposes of plaintiffs' argument based upon *Winsett v. McGinnes,* 617 F.2d 996 (3d Cir.1980). *United States v. Jiles,* 658 F.2d 194, 200 (3d Cir.1981), *cert. denied,* 455 U.S. 923, 102 S.Ct. 1282, 71 L.Ed.2d 465 (1982), decided two months after *Helms v. Hewitt* does not directly address the issue.

The analysis employed by the Ninth Circuit embraces a two step process. "First, it must be determined in a particular case whether the ... regulations [or statute] create an entitlement to a specified procedure. Second, a deviation from the ... regulations [or statute] will assume constitutional proportions only when it affects the fairness of the process established by the regulations [or statute]." *Wakinekona v. Olim,* 664 F.2d at 712.[31] However, the claim that a state procedural statute can create a liberty or property interest cannot withstand analysis. *Id.* at 712–14 (Goodwin, J., dissenting).

In finding that a procedural statute could create a liberty interest, the court in *Wakinekona v. Olim,* 664 F.2d at 711, relied upon *Greenholtz v. Nebraska Prison Inmates,* 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979). The court's reliance on *Greenholtz* was misplaced. In *Greenholtz,* the Supreme Court found that a state statute created a liberty interest in release on parole. The statute set forth the grounds for the denial of release. The liberty interest was created by the substantive statutory limitation placed upon the discretion of the parole board. *Id.* That certain procedures had to be followed in denying parole was irrelevant in determining the existence of a liberty interest.

The Fourteenth Amendment prohibits state deprivation of property or liberty without due process of law. Absent a property or liberty interest, there is no need to consider what process is due. *Board of Regents v. Roth,* 408 U.S. at 570–71, 92 S.Ct. at 2705–06. To find that a procedure is a constitutionally protected interest would be to find that a state cannot deprive an individual of due process of law without due process of law.[32] The due process clause mandates procedural protections to protect liberty and property. Procedural safeguards, in themselves, are not liberty or property interests; rather they are designed to safeguard those constitutionally protected interests. *See Bills v. Henderson,* 631 F.2d at 1298–99; *Cofone v. Manson,* 594 F.2d at 938. (A liberty interest cannot derive from a statute that merely establishes procedural requirements.)

In *Shango v. Jurich,* 681 F.2d at 1101, the court stated that:

Constitutionalizing every state procedural right would stand any due process analysis on its head. Instead of identifying the substantive interest at stake and then ascertaining what process is due to the individual before he can be deprived of that interest, the process is viewed as a substantive end in itself. The purpose of a procedural safeguard, however, is the protection of a substantive interest to which the individual has a legitimate claim of entitlement. A basic problem, in terms of cogent federal constitutional analysis, with maintaining that one has an entitlement to a state created procedural device such as a hearing is that the dimensions of the procedural protections which attach to state law entitlements are defined by federal standards. When the federal standard is applied, the 'process that is due in a given instance may bear little or no resemblance to the original expectation....' *Bills v. Henderson, supra,* 631 F.2d at 1298.

---

**31.** The court in *Wakinekona* went on to hold that because prison regulations required two hearings, one before an initiating body and the other before a separate decision making committee, plaintiff was deprived of procedural due process when he had two hearings before the same committee in that he was not offered an impartial tribunal—"one of the mainstays of procedural fairness." *Id.* Applying *Wakinekona* to the facts of this case, it would appear that the defendants would prevail. For plaintiffs concede that the procedure utilized, even if unauthorized, did not render the procedure unfair in that it comported with constitutional standards of due process. Since the parties did not address this issue, the Court will not rely on this analysis.

**32.** "If a right to a hearing is a liberty interest, and if due process accords the right to a hearing, then one has interpreted the Fourteenth Amendment to mean that the state may not deprive a person of a hearing without providing him a hearing." *Shango v. Jurich,* 681 F.2d at 1101.

A state statute may afford greater procedural protections than the due process clause requires. While state officials may deviate from that statutory procedure, once a federal court determines that the procedure actually utilized by state officials to deprive an individual of a liberty or property interest comports with minimum requirements of due process, the constitutional analysis ceases. *Atencio v. Board of Education of Penasco Independent School District,* 658 F.2d 774, 779 & n. 11, 781 (10th Cir.1981); *Morrow v. Bassman,* 515 F.Supp. 587, 591–92 (S.D.Ohio, 1981) ("The deprivation of procedural rights . . . must be in the nature of noncompliance with that which the *constitution* demands, and not merely predicated upon inconsistency with . . . state procedural statutes or regulations."). Whether or not the procedure employed deviated from statutorily prescribed procedures is irrelevant for constitutional purposes. The failure of the state to abide by its enhanced procedural protection does not rise to a constitutional level. "[I]t is only when the [state] agency's disregard of its rules [or a state statute] results in a procedure which in itself impinges upon due process rights that a federal court should intervene in the decisional processes of state institutions." *Bates v. Sponberg,* 547 F.2d 325, 329–30 (6th Cir.1976).

> [The illegality of an agency's action under a] state statute neither can add nor subtract from its constitutional validity. Mere violation of a state statute does not infringe the federal constitution. And state action, even though illegal under state law, can be no more and no less constitutional under the Fourteenth Amendment than if it were sanctioned by the state legislature.

*Snowden v. Hughes,* 321 U.S. 1, 11, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944) [citations omitted]. If the rule were otherwise, the federal courts would become arbiters of adherence to state procedures in every decision which a state makes with respect to the protected property and liberty interests of individuals. So long as the constitutional minimum is met, the function of policing state agency adherence to state regulations is properly the province of the state courts. *See, Owensboro Water Works Co. v. Owensboro,* 200 U.S. 38, 47, 26 S.Ct. 249, 252, 50 L.Ed. 361 (1906).

■ Therefore, it is held that state statutory procedural rules cannot in and of themselves be the source of a protected Fourteenth Amendment interest which is entitled to be accorded due process of law. As a consequence, it is inappropriate to pose the constitutional issue as to whether the defendant school boards should give plaintiffs direct hearings before the defendant boards. Instead, the starting point in a constitutional analysis must be whether the procedure utilized comports with the minimum requirements of due process necessary to protect the individual's protected property or liberty interest. Here, defendants' procedures do so comply.

Plaintiffs also claim that the failure of a state agency to follow statutory procedures constitutes a violation of the Fourteenth Amendment whether or not 14 *Del.C.* § 1413 creates a constitutionally protected interest. Plaintiffs rely primarily on *D'Iorio v. County of Delaware,* 447 F.Supp. 229, 240–41 (E.D.Pa.), *vacated on other grounds,* 592 F.2d 681 (3d Cir.1978), to support their theory that the failure of a governmental entity to follow its own regulations can constitute a violation of the due process clause.[33] Other courts[34] and commenta-

---

**33.** On appeal the Third Circuit gave a historical recital of the lower court's adoption of the doctrine, 529 F.2d at 685 n. 2, without adopting the doctrine. Moreover, *D'Iorio* was written before the Supreme Court's decision in *United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). *See, infra* at pp. 864–865.

**34.** *See, e.g., Mabey v. Reagan,* 537 F.2d 1036, 1042 (9th Cir.1976); *Bluth v. Laird,* 435 F.2d 1065, 1071 (4th Cir.1970); *United States v. Leahey,* 434 F.2d 7, 11 (1st Cir.1970); *United States v. Heffner,* 420 F.2d 809, 811–13 (6th Cir.1969); *Warren v. National Association of Secondary School Principals,* 375 F.Supp. 1043, 1048 (N.D.Texas 1974); *Johnson v. Cain,* 5

tors[35] have adopted this "arbitrariness" doctrine in holding that a governmental agency must follow its own procedural regulations where those procedures are designed to protect individuals rather than promote administrative convenience. *Id.* at 241.

The arbitrariness doctrine is based upon a series of federal court decisions[36] overturning actions of administrative agencies for failure to follow their own procedures, especially where individual rights were involved. *See, Mabey v. Reagan,* 537 F.2d at 1042; *D'Iorio v. County of Delaware,* 447 F.Supp. at 240–41. In many of these cases the procedures at issue conferred greater procedural protections than constitutionally required.[37] However, the federal precedent underlying the doctrine has recently been construed to be primarily a judge made doctrine of administrative law without constitutional underpinnings. *See United States v. Caceres,* 440 U.S. 741, 751–55, 751 n. 14, 754 nn. 18 & 19, 99 S.Ct. 1465, 1471–73, 1471 n. 14, 1472–73 n. 18 & 19, 59 L.Ed.2d 733 (1979). *Smith v. State of Georgia,* 684 F.2d 729, 732 n. 6 (11th Cir.1982);

*Atencio v. Board of Education of Penasco Independent School District,* 658 F.2d at 779 & n. 11; *Bills v. Henderson,* 631 F.2d at 1299;[38] *Bates v. Sponberg,* 547 F.2d 325, 330 n. 7 (6th Cir.1976). Since the doctrine that administrative agencies are bound by their own procedures is basically one of federal administrative law, it has little application to constitutional review of the actions of a state administrative agency which fails to follow its own procedures.[39] Whatever its vitality might have been in the past, a constitutional due process claim does not arise from the mere fact that a state agency fails to follow its own procedures. Of course, if the failure of an agency to follow its own procedures or statutorily prescribed procedures in the taking away of a constitutionally protected property or liberty interest results in a procedure not comporting with minimal due process, the agency action will be overruled.[40] This occurs, however, not because the agency failed to follow its own procedures or a statute, but because it defaulted in providing the aggrieved individual minimal due process guarantees.

---

EPD ¶ 8509, C.A. No. 4543, slip op. at 10 (D.Del. Jan. 17, 1973).

**35.** *See* Note, *Violations by Agencies of Their Own Regulations,* 87 Harv.L.Rev. 629, 653–655 (1974).

**36.** *See, e.g., Morton v. Ruiz,* 415 U.S. 199, 235–36, 94 S.Ct. 1055, 1074–75, 39 L.Ed.2d 270 (1974) (failure to publish more restrictive eligibility criteria than that previously employed by the Bureau of Indian Affairs without following agency procedures for publishing new rule rendered new criteria ineffective); *Yellin v. United States,* 374 U.S. 109, 123–24, 83 S.Ct. 1828, 1836–37, 10 L.Ed.2d 778 (1963) (failure of congressional committee to comply with its own rule to consider a request of a witness to be heard in executive session resulted in reversal of contempt conviction); *Vitarelli v. Seaton,* 359 U.S. 535, 539–40, 79 S.Ct. 968, 972–73, 3 L.Ed.2d 1012 (1959) (dismissal of government employee invalidated where regulations governing hearing procedures were not followed); *Service v. Dulles,* 354 U.S. 363, 388–89, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957) (where there was a failure to satisfy regulations requiring undersecretary's approval and review of full record employee dismissal was overturned); *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 268, 74 S.Ct. 499, 503, 98 L.Ed.

681 (1954) (failure to follow agency procedures in determining an application for suspension of deportation is grounds for grant of habeas corpus petition).

**37.** *See supra* note 36.

**38.** While it is clear that procedural rules promulgated by departments or agencies within the federal government must be adhered to, the history of the federal rule is based on federal law. Consequently, these cases can not be relied upon to support a constitutional claim.
*Bills v. Henderson,* 631 F.2d at 1299 (citations omitted).

**39.** *Tyler v. Board of Education of the New Castle County Vocational-Technical School District,* 519 F.Supp. 834, 836 (D.Del.1981), is inapposite. An examination of the record in that case, C.A. No. 80–279, Doc. 59, indicates that counsel did not bring to the Court's attention the ramifications of *Caceres, supra,* on the issue of whether an agency is constitutionally required to follow its own procedures.

**40.** Plaintiffs have conceded that the procedure utilized by the defendants satisfies the minimal due process requirement.

In *Caceres,* The Supreme Court limited the application of the rule that a failure to follow procedural regulations can constitute a constitutional claim. 440 U.S. at 749–55, 99 S.Ct. at 1470–73; Note, *The Supreme Court, 1978,* 93 Harv.L.Rev. 108, 108–118 (1979). The Court stated that a "court's duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law." [41] 440 U.S. at 749, 99 S.Ct. at 1470. As previously discussed,[42] in this case, the Fourteenth Amendment mandates that the termination procedures actually to be used comply with the minimum requirements of due process.

Another constitutional ground for mandatory agency compliance with procedural regulations arises when "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres,* 440 U.S. at 752–53, 753 n. 15, 99 S.Ct. at 1471–72, 1472 n. 15.[43] Plaintiffs cannot reasonably contend that they have relied on the statutory termination procedures and that the alleged breach of these procedures has caused them to suffer substantially. The plaintiffs have had ample notice of the defendants' modification of termination procedures. Defendants and their predecessor, the NCCSD, have utilized these procedures for at least the last five years. Plaintiffs have not stated that they have altered their conduct in any way as a result of the defendants' actions. While the defendants' actions may be improper under state law, an issue expressly open for state court determination, *see supra* Part II, the plaintiffs cannot be said to have relied upon the procedures set forth in 14 *Del.C.* § 1413 and to have been substantially injured by the defendants' alteration of these procedures.[44]

Finally, the *Caceres* decision requires this Court to consider whether the defendants' departure from statutorily prescribed regulations amounts to a denial of equal protection. 440 U.S. at 752, 99 S.Ct. at 1471. Plaintiffs argue that by affording teachers in the defendant school districts a different termination procedure than teachers in other state school districts, the defendants have violated the plaintiffs' rights to equal protection.

There are several problems with the plaintiffs' equal protection claim. First, ad-

---

**41.** Enforcement of a federal statute to compel an agency to follow procedural regulations is not a constitutional doctrine. In the present case, that the defendants may have failed to comply with a state statute does not present a constitutional question. *See supra* pp. 862–864 and cases cited therein. It should be pointed out, though, that at least one commentator has stated a position to the contrary. Note, *The Supreme Court, 1978 Term,* 93 Harv. L.Rev. at 109.

**42.** *See supra* text at pp. 862–863.

**43.** At least one of the cases cited in support of a "broad" arbitrariness doctrine can be read to conform with the holding in *Caceres* that a due process violation arises when an individual reasonably relies and is subsequently injured as a result of an agency's failure to follow its own regulations. *See United States v. Leahey,* 434 F.2d at 10–11.

**44.** Under the defendants' procedures, a teacher is entitled to written notice of a hearing which includes the reasons for the contemplated termination of services and the procedures to be followed. Upon request of a teacher, a public or closed hearing is conducted. The hearing is conducted by a hearing officer. The parties may be represented by counsel, present evidence, and subpoena and cross-examine witnesses. A teacher may not be terminated unless one or more of the grounds stated in the notice to terminate has been established by a preponderance of the evidence. Upon completion of the hearing, the Board of Education in the defendant school districts receives a copy of the findings of fact and conclusions of law of a hearing officer, a written response of the affected teacher to the Report and a transcript of the hearing. A majority of the Board then reviews the teacher's case. The Board then must submit to the teacher a written decision and order setting forth findings of fact and conclusions of law based solely on the testimony and exhibits in the records. (Doc. 5, Ex. A—*Rules of Procedure for the Conduct of Termination Proceedings.*) Comparing these procedures to those set forth in 14 *Del.C.* § 1413, *see, supra* note 1, the Court cannot conclude that the plaintiffs have been or would be substantially injured by the defendants' modification—unauthorized or not.

ministrative necessity appears to be a rational, though perhaps not compelling, basis for treating teachers in the defendant school districts differently than teachers in other school districts. More importantly, the defendants before the Court have treated all teachers within their jurisdiction equally. Plaintiffs' equal protection claim is more properly directed at state officials with responsibility for the administration of public education on a state-wide basis and not the defendants. Defendants cannot control how teachers are treated in other school districts.[45]

In summary, plaintiff teachers do not possess a liberty or property interest in statutorily prescribed termination procedures. Nor have the plaintiffs been deprived of a property interest in employment without due process of law. The defendants' termination procedures comport with federal constitutional standards of due process. The alleged failure of defendants to follow the procedures set forth in 14 Del.C. §§ 1413 & 1420 does not constitute a violation of due process absent a finding that the plaintiffs relied to their substantial detriment on the procedures the defendants are alleged not to have followed. Plaintiffs have made no such showing. Finally, defendants have not denied plaintiffs' equal protection of the laws.[46]

IV.  Conclusion

It has been held that this Court's orders in *Evans v. Buchanan,* have no effect on the procedures to be followed for teacher terminations. This Court, in exercising its discretion not to exercise pendent jurisdiction, will dismiss the plaintiffs' state law claim without prejudice. Finally, the defendants' motion for summary judgment will be granted with respect to plaintiffs' constitu-tional claims alleging violations of the due process and equal protection clauses of the Fourteenth Amendment.

An appropriate order will issue.

---

45.  The Court also notes that the difference between the defendants' procedures and those set forth in 14 *Del.C.* § 1413 is one of form and not substance. Plaintiffs would be hard pressed to demonstrate that utilization of the defendants' procedures cause any different result than if the statutory procedures were utilized with respect to the final disposition of a teacher's termination case. *See Caceres,* 440 U.S. at 752, 99 S.Ct. at 1471.

46.  Having found that the plaintiffs do not have a constitutionally protected interest in a statutory procedure, the Court need not consider whether the existence of a state post-deprivation remedy would constitute due process of law under *Paratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).